**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
**In re:**                                                :
                                                          :  **Chapter 11**
                                                          :
**STAR TRIBUNE HOLDINGS**                                 :  **Case No. 09-10244 (RDD)**
**CORPORATION, et al.,**                                  :
                                                          :  **(Jointly Administered)**
                                                          :
        **Debtors.**[1]                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

New York, New York 10017

Telephone: (212) 450-4000

Facsimile: (212) 701-6001

Marshall S. Huebner

Timothy E. Graulich

Lynn I. Poss

*Counsel to the Debtors*
*and Debtors in Possession*

Dated: September 8, 2009

---

[1] The Debtors are Star Tribune Holdings Corporation and The Star Tribune Company. The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

# TABLE OF CONTENTS

PAGE

ARTICLE 1
DEFINITIONS AND RULES OF INTERPRETATION

Section 1.1    Definitions..................................................................................6
Section 1.2    Rules of Interpretation ...........................................................24
Section 1.3    Computation of Time...............................................................24
Section 1.4    References to Monetary Figures .............................................24
Section 1.5    Exhibits; Schedules; Plan Supplements .................................25

ARTICLE 2
PLAN CONSOLIDATION

Section 2.1    Order Granting Plan Consolidation ........................................25
Section 2.2    Plan Consolidation ..................................................................25

ARTICLE 3
TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

Section 3.1    Treatment of Administrative Claims .......................................25
Section 3.2    Treatment of Priority Tax Claims ...........................................26

ARTICLE 4
CLASSIFICATION AND TREATMENT OF OTHER CLAIMS AND INTERESTS

Section 4.1    Classes for the Debtors ...........................................................27
Section 4.2    Treatment of Claims and Interests ..........................................29
Section 4.3    Treatment of Intercompany Claims .........................................31
Section 4.4    Compliance with Laws and Effects on Distributions ............31

ARTICLE 5
ACCEPTANCE OR REJECTION OF THE PLAN

Section 5.1    Voting of Claims......................................................................31
Section 5.2    Presumed Acceptance of Plan.................................................32
Section 5.3    Presumed Rejection of Plan ....................................................32
Section 5.4    Acceptance by Impaired Classes ............................................32
Section 5.5    Nonconsensual Confirmation..................................................32

## ARTICLE 6
### IMPLEMENTATION OF THE PLAN

| Section 6.1 | Continued Corporate Existence | 32 |
| Section 6.2 | Section 1145 Exemption | 33 |
| Section 6.3 | Compensation Plans | 33 |
| Section 6.4 | Letters of Credit | 33 |
| Section 6.5 | Authorization of New Plan Securities | 33 |
| Section 6.6 | New Stockholders' Agreement | 33 |
| Section 6.7 | Cancellation of Existing Securities and Related Agreements | 33 |
| Section 6.8 | Restructuring Transactions | 34 |
| Section 6.9 | No Exit Financing Contingency | 35 |
| Section 6.10 | Other Transactions | 35 |

## ARTICLE 7
### PROVISIONS GOVERNING DISTRIBUTIONS

| Section 7.1 | Disbursing Agent | 36 |
| Section 7.2 | Timing and Delivery of Distributions | 36 |
| Section 7.3 | Manner of Payment under Plan | 37 |
| Section 7.4 | Undeliverable or Non-Negotiated Distributions | 39 |
| Section 7.5 | Claims Paid or Payable by Third Parties | 39 |
| Section 7.6 | Distributions on Account of Allowed Second Lien Lender Claims | 40 |

## ARTICLE 8
### FILING OF ADMINISTRATIVE CLAIMS

| Section 8.1 | Professional Fee Claims | 40 |
| Section 8.2 | Other Administrative Claims | 41 |

## ARTICLE 9
### DISPUTED CLAIMS

| Section 9.1 | Objections to Claims | 42 |
| Section 9.2 | Resolution of Disputed Claims | 42 |
| Section 9.3 | Estimation of Claims and Interests | 42 |
| Section 9.4 | Payments and Distributions with Respect to Disputed Claims | 43 |
| Section 9.5 | No Amendments to Claims | 44 |
| Section 9.6 | No Interest | 45 |

## ARTICLE 10
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 10.1    Rejection of Executory Contracts and Unexpired Leases......................45
Section 10.2    Schedules of Executory Contracts and Unexpired Leases....................45
Section 10.3    Categories of Executory Contracts and Unexpired Leases to be
                Assumed...............................................................................................46
Section 10.4    Other Categories of Agreements and Policies ......................................48
Section 10.5    Assumption and Rejection Procedures and Resolution of Treatment
                Objections.............................................................................................50
Section 10.6    Rejection Claims...................................................................................52
Section 10.7    Assignment ..........................................................................................52
Section 10.8    Approval of Assumption, Rejection, Retention or Assignment of
                Executory Contracts and Unexpired Leases ..........................................53
Section 10.9    Modifications, Amendments, Supplements, Restatements or Other
                Agreements ...........................................................................................53

## ARTICLE 11
### PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

Section 11.1    Corporate Action...................................................................................54
Section 11.2    Directors and Officers of the Reorganized Debtors...............................54

## ARTICLE 12
### EFFECT OF CONFIRMATION

Section 12.1    Vesting of Assets ..................................................................................55
Section 12.2    Releases and Discharges ......................................................................55
Section 12.3    Discharge and Injunction .....................................................................56
Section 12.4    Term of Injunction or Stays .................................................................57
Section 12.5    Exculpation ..........................................................................................57
Section 12.6    Release by the Debtors..........................................................................57
Section 12.7    Voluntary Releases by the Holders of Claims and Interests.................58
Section 12.8    Set-off and Recoupment ......................................................................58
Section 12.9    Avoidance Actions................................................................................59
Section 12.10   Preservation of Causes of Action..........................................................59
Section 12.11   Compromise and Settlement of Claims and Controversies ..................60

## ARTICLE 13
### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

Section 13.1    Conditions to Confirmation ..................................................................60
Section 13.2    Conditions to Effectiveness ..................................................................60
Section 13.3    Waiver of Conditions to Confirmation or Effectiveness ......................61

## ARTICLE 14
### MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

Section 14.1    Plan Modifications .................................................................................61
Section 14.2    Revocation or Withdrawal of the Plan and Effects of Non-
Occurrence of Confirmation or Effective Date......................................62

## ARTICLE 15
### RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

## ARTICLE 16
### MISCELLANEOUS

Section 16.1    Exemption from Transfer Taxes and Recording Fees ...........................64
Section 16.2    Expedited Tax Determination .................................................................64
Section 16.3    Payment of Statutory Fees .....................................................................64
Section 16.4    No Listing of Plan Securities and Restrictions on Transfer..................64
Section 16.5    Dissolution of the Creditors' Committee ...............................................65
Section 16.6    Second Lien Agent Fees ........................................................................65
Section 16.7    Plan Supplements...................................................................................65
Section 16.8    Claims Against Other Debtors ...............................................................65
Section 16.9    Substantial Consummation ....................................................................65
Section 16.10   Section 1125 of the Bankruptcy Code ...................................................65
Section 16.11   Severability .............................................................................................66
Section 16.12   Governing Law .......................................................................................66
Section 16.13   Binding Effect.........................................................................................66
Section 16.14   Notices ....................................................................................................67
Section 16.15   Reservation of Rights..............................................................................68
Section 16.16   Further Assurances..................................................................................68
Section 16.17   Case Management Order.........................................................................68

iv

## EXHIBITS

- Exhibit A        Terms of New Secured Term Notes

- Exhibit B        Terms of New Warrants

- Exhibit C        Outstanding Letters of Credit

## INTRODUCTION

Star Tribune Holdings Corporation and The Star Tribune Company propose the following amended joint plan of reorganization under section 1121(a) of title 11 of the Bankruptcy Code.[2]

Pursuant to section 1125(b) of the Bankruptcy Code, votes to accept or reject a plan of reorganization cannot be solicited from holders of Claims or Interests entitled to vote on the plan until a disclosure statement has been approved by a bankruptcy court and distributed to such holders. On July 30, 2009, the Bankruptcy Court entered the Approval Order that, among other things, approved the Disclosure Statement, set voting procedures and scheduled the Confirmation Hearing. The Disclosure Statement that accompanies this Plan contains, among other things, a discussion of the Debtors' history, businesses, properties and operations, projections for those operations, risk factors associated with the businesses and the Plan and a summary and analysis of the Plan and certain related matters, including, among other things, the securities to be issued under the Plan.

## ARTICLE 1
### DEFINITIONS AND RULES OF INTERPRETATION

### Section 1.1    Definitions

Unless the context requires otherwise, the following terms used in the Plan shall have the following meanings:

1.    "**Administrative Agents**" means the First Lien Agent and the Second Lien Agent.

2.    "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including Other Administrative Claims and Professional Fee Claims.

3.    "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    "**Allowed**" means all or that portion, as applicable, of any Claim against any Debtor (i) that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time, as liquidated in amount and not disputed or contingent, and for which no contrary or superseding Proof of Claim has been filed, (ii) that has been expressly allowed by Final Order or under the Plan, (iii) that has been compromised, settled or otherwise resolved pursuant to Final Order of the Bankruptcy Court or Section 9.2 of the Plan, (iv) that the Debtors do not timely object to in accordance with Section 9.1 of the Plan or (v) that is a Lender Claim; *provided, however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered "Allowed Claims" for any other purpose under the Plan or otherwise, except if and to the

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in Section 1.1 of this Plan.

extent otherwise determined to be Allowed as provided herein. Unless otherwise specified under the Plan, under the Bankruptcy Code or by order of the Bankruptcy Court, Allowed Claims shall not, for any purpose under the Plan, include any interest, costs, fees or charges on such Claims from and after the Petition Date.

5. "**Approval Order**" means the Order (i) Approving the Disclosure Statement; (ii) Approving Solicitation Procedures; (iii) Allowing and Estimating Certain Claims for Voting Purposes; (iv) Approving Forms of Ballots and Establishing Procedures for Voting on the Debtors' Joint Plan of Reorganization; and (v) Scheduling a Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Debtors' Joint Plan of Reorganization, entered by the Bankruptcy Court on July 30, 2009 [Docket No. 393].

6. "**Assumption Effective Date**" means the date upon which the assumption of an executory contract or unexpired lease under this Plan is deemed effective.

7. "**Assumption Party**" means a counterparty to an executory contract or unexpired lease to be assumed and/or assigned by the Debtors.

8. "**Avista Funds**" means Avista Capital Partners, LP, Avista Capital Partners (Offshore) LP, Avista Capital Holdings, LP, Avista Capital Partners GP, LLC and their respective Affiliates.

9. "**Avoidance Actions**" has the meaning set forth in Section 12.9 of this Plan.

10. "**Ballot**" means the voting form distributed to each holder of an Impaired Claim entitled to vote, on which the holder is to indicate acceptance or rejection of the Plan in accordance with the Voting Instructions and make any other elections or representations required pursuant to the Plan or the Approval Order.

11. "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended, to the extent applicable to the Chapter 11 Cases.

12. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York, or any other court with jurisdiction over the Chapter 11 Cases.

13. "**Bankruptcy Restructuring Agreements**" means, collectively, (i) the agreement, effective as of March 13, 2009, between Star Tribune and the Pressmen; (ii) the agreement, effective as of March 15, 2009, between Star Tribune and the Mailers; (iii) the agreement, effective as of March 19, 2009, between Star Tribune and the Typos; (iv) the agreement, effective as of April 7, 2009, between Star Tribune and the Platemakers; (v) the agreement, effective as of April 30, 2009 and May 1, 2009, between Star Tribune and the Guild; (vi) the agreement, effective as of June 18, 2009, between Star Tribune and the Fleet; (vii) the agreement, effective as of June 30, 2009, between Star Tribune and the Electricians; (viii) the agreement, effective as of July 1, 2009, between Star Tribune and the Operating Engineers; (ix) the agreement, effective as of July 2, 2009 between Star Tribune and the SEIU; and (x) the agreement, ratified July 29, 2009, between Star Tribune and the Machinists.

14. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, each as now in effect or as hereafter amended, to the extent applicable to the Chapter 11 Cases.

15. "**Bar Date Order**" means the Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof, entered by the Bankruptcy Court on April 14, 2009 [Docket No. 210].

16. "**Building Services**" means the Service Employees International Union, Local #26.

17. "**Business Day**" means any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which banking institutions in New York, New York or Minneapolis, Minnesota are required or authorized to close by law or executive order.

18. "**Case Management Order**" means, prior to the Effective Date, the Order Approving Notice, Case Management and Administrative Procedures, entered by the Bankruptcy Court on January 16, 2009 [Docket No. 23], and, on and after the Effective Date, such order as modified by Section 16.17 of the Plan.

19. "**Cash**" means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

20. "**Cause of Action**" means, without limitation, any and all actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of set-off, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, Claims, counterclaims, cross-claims, affirmative defenses and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date. Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtors or their Estates, "Causes of Action" shall include (i) all rights of set-off, counterclaim or recoupment and Claims on contracts or for breaches of duties imposed by law or equity, (ii) Claims pursuant to sections 362, 510, 542, 543, 544 through 550 or 553 of the Bankruptcy Code and (iii) Claims and defenses such as fraud, mistake, duress, usury and any other defenses set forth in section 558 of the Bankruptcy Code. A non-exclusive list of Causes of Action is attached to the Plan as Schedule 13.10.

21. "**Chapter 11 Cases**" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court in the case styled *In re Star Tribune Holdings Corporation, et al.*, Case No. 09-10244 (RDD).

22. "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code.

23. "**Claims Agent**" means The Garden City Group, Inc., 105 Maxess Road, Melville, New York 11747.

24. "**Claims Objection Deadline**" means 11:59 p.m. (prevailing Eastern time) on the 365th calendar day after the Effective Date, subject to further extensions or exceptions as may be ordered by the Bankruptcy Court.

25. "**Claims Objection Procedures Order**" means the Order Establishing Procedures for Claims Objections, entered by the Bankruptcy Court on July 13, 2009 [Docket No. 337].

26. "**Claims Reserves**" has the meaning set forth in Section 9.4 of this Plan.

27. "**Claims Settlement Procedures Order**" means the Order Establishing Procedures for Settling and Allowing Disputed Proofs of Claim, entered by the Bankruptcy Court on July 31, 2009 [Docket No. 395].

28. "**Class**" means any group of Claims or Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

29. "**Class 3 New Common Stock Allocation**" means the Plan Shares and the Old Star Tribune Holdings Common Stock to be distributed pursuant to the Plan, minus the Class 4 New Common Stock Allocation.

30. "**Class 4 New Common Stock Allocation**" means (i) if the aggregate amount of Allowed Unsecured Claims is less than or equal to $100,000,000, then 3.5% of each of the (x) Plan Shares and (y) Old Star Tribune Holdings Common Stock distributed pursuant to the Plan; (ii) if the aggregate amount of Allowed Unsecured Claims is greater than $100,000,000 but less than or equal to $105,000,000, then 3.7% of each of the (x) Plan Shares and (y) Old Star Tribune Holdings Common Stock distributed pursuant to the Plan; (iii) if the aggregate amount of Allowed Unsecured Claims is greater than $105,000,000 but less than or equal to $110,000,000, then 3.9% of each of the (x) Plan Shares and (y) Old Star Tribune Holdings Common Stock distributed pursuant to the Plan; (iv) if the aggregate amount of Allowed Unsecured Claims is greater than $110,000,000 but less than or equal to $115,000,000, then 4.1% of each of the (x) Plan Shares and (y) Old Star Tribune Holdings Common Stock distributed pursuant to the Plan; (v) if the aggregate amount of Allowed Unsecured Claims is greater than $115,000,000 but less than or equal to $120,000,000, then 4.3% of each of the (x) Plan Shares and (y) Old Star Tribune Holdings Common Stock distributed pursuant to the Plan; and (vi) if the aggregate amount of Allowed Unsecured Claims is greater than $120,000,000, then 4.5% of each of the (x) Plan Shares and (y) Old Star Tribune Holdings Common Stock distributed pursuant to the Plan.

31. "**Collateral**" means any property or interest in property of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance and is not otherwise invalid under the Bankruptcy Code or other applicable law.

32.     "**Collective Bargaining Agreements**" means those collective bargaining agreements set forth on Schedule 10.3(c).  Schedule 10.3(c) shall be filed by the Debtors as specified in Section 16.7 of this Plan.

33.     "**Company-Sponsored Plans**" means the three company-sponsored, defined-benefit pension plans (Plan A, Plan G, and Plan O) that are subject to Title IV of ERISA.

34.     "**Compensation Plans**" means the (i) Reorganized Star Tribune Incentive Plan and (ii) Profit Sharing Plan.

35.     "**Confirmation**" means confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

36.     "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court on its docket.

37.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

38.     "**Confirmation Order**" means the order of the Bankruptcy Court entered pursuant to section 1129 of the Bankruptcy Code confirming the Plan.

39.     "**Contingent Claim**" means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event that has not yet occurred as of the date on which such Claim is sought to be estimated or on which an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

40.     "**Convenience Claim**" means any Claim against either of the Debtors that would otherwise be a General Unsecured Claim, but as to which one of the following applies: (a) such Claim is in an Allowed amount greater than $0 but less than or equal to $150,000 or (b) such Claim is in an Allowed amount greater than $150,000 and the holder of such Claim has elected to have such Claim treated as a Class 5 Convenience Class Claim in the Allowed amount of $150,000 (and has waived any Claim with respect to the Allowed amount of such Claim in excess of $150,000) by so indicating on the Ballot timely and properly submitted to vote such Claim; *provided, however,* that a General Unsecured Claim originally Allowed in an amount in excess of $150,000 may not be sub-divided into multiple Claims of $150,000 or less for purposes of receiving treatment as a Convenience Claim.

41.     "**Core Parties**" has the meaning ascribed to it in the Case Management Order.

42.     "**Creditor**" means any holder of a Claim.

43. "**Creditors' Committee**" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time.

44. "**Customer Program**" means the Debtors' customer programs and practices as to which the Debtors were authorized to honor pre-petition obligations and to otherwise continue in the ordinary course of business by the Order Pursuant to Sections 105(a), 363(b), 363(c), 365(a), 1107(a) and 1108 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (i) Honor Prepetition Obligations to Customers and to Otherwise Continue Customer Programs and Practices in the Ordinary Course of Business and (ii) Authorize Financial Institutions to Honor and Process Related Checks and Transfers, entered by the Bankruptcy Court on January 16, 2009 [Docket No. 28].

45. "**Cure**" means a distribution made in the ordinary course of business following the Effective Date pursuant to an executory contract or unexpired lease assumed under section 365 or 1123 of the Bankruptcy Code (i) in an amount equal to the Proposed Cure (including if such Proposed Cure is zero dollars) or (ii) if a Treatment Objection is filed with respect to the applicable Proposed Cure, then in an amount equal to the unpaid monetary obligations owing by the Debtors and required to be paid pursuant to section 365(b) of the Bankruptcy Code, as may be (x) determined by Final Order or (y) otherwise agreed upon by the parties.

46. "**Debtor(s)**" means each of Star Tribune Holdings and Star Tribune. To the extent the context requires any reference to the Debtors after the Effective Date, Debtors shall mean the Reorganized Debtors.

47. "**Disallowed Claim**" means any Claim or any portion thereof that (i) has been disallowed by a Final Order of the Bankruptcy Court, (ii) is listed in the Schedules as "$0," contingent, disputed or unliquidated and as to which a proof of claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, (iii) has been agreed to be equal to "$0" or to be expunged pursuant to the Claims Settlement Procedures Order or otherwise or (iv) is not listed on the Schedules and as to which a proof of claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

48. "**Disbursing Agent**" means Old Star Tribune Holdings or any Person or Entity designated or retained by Old Star Tribune Holdings, in its sole discretion and without the need for any further order of the Bankruptcy Court, to serve as disbursing agent pursuant to Section 7.1 of the Plan.

49. "**Disclosure Statement**" means the disclosure statement relating to this Plan, including all exhibits and schedules thereto, as amended, supplemented or modified from time to

time, in each case, as approved pursuant to section 1125 of the Bankruptcy Code by the Bankruptcy Court in the Approval Order.

50. "**Disputed Claim**" means a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim.

51. "**Distribution Date**" means any of (i) the Initial Distribution Date, (ii) the Interim Distribution Dates and (iii) the Final Distribution Date.

52. "**Distribution Record Date**" means the Confirmation Date.

53. "**Effective Date**" means the Business Day selected by the Debtors that is (i) on or after the Confirmation Date and on which no stay of the Confirmation Order is in effect and (ii) on or after the date on which the conditions to effectiveness of the Plan specified in Section 13.2 of the Plan have been either satisfied or waived as set forth herein.

54. "**Electricians**" means the International Brotherhood of Electrical Workers Local 292 (IBEW).

55. "**Employee Agreement**" means any agreement (other than a Collective Bargaining Agreement or standard form documents or policies executed or acknowledged by newly-hired employees) between any of the Debtors and any current or former directors, officers or employees of any of the Debtors.

56. "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

57. "**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1301, *et seq.*

58. "**Estate(s)**" means, individually, the estate of either of the Debtors and collectively, the estates of both of the Debtors created under section 541 of the Bankruptcy Code.

59. "**Final Distribution Date**" means a day (a) selected by the Reorganized Debtors in their sole discretion that is after the Initial Distribution Date and is no earlier than 20 calendar days after the date on which all Disputed Claims have become either Allowed Claims or Disallowed Claims or (b) otherwise established by the Bankruptcy Court.

60. "**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for

a new trial, reargument or rehearing has been resolved by the court in which such motion was filed; *provided, however,* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

61. "**First Lien Agent**" means Credit Suisse, Cayman Islands Branch, in its capacity as administrative agent under the First Lien Credit Agreement.

62. "**First Lien Credit Agreement**" means the agreement dated March 5, 2007 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time), among Snowboard Acquisition Corporation (the initial borrower under the First Lien Credit Agreement), Credit Suisse, Cayman Islands Branch, as Administrative Agent, swing line lender, a letter of credit issuer and Collateral Agent, RBS Securities Corporation, as Syndication Agent, and the lenders party thereto.

63. "**First Lien Lender Claims**" means all Claims of any First Lien Lender under the First Lien Credit Agreement or secured under the related security agreements, including, without limitation, the Claims of Credit Suisse International in respect of swap agreements, which Claims shall be Allowed in the aggregate amount of $392,923,611.

64. "**First Lien Lenders**" means the Lenders party to the First Lien Credit Agreement.

65. "**Fleet**" means the Miscellaneous Drivers & Helpers Union Local #638.

66. "**Freelance Agreement**" means any agreement between Star Tribune or Star Tribune Holdings, on the one hand, and a freelance writer, photographer, designer or illustrator on the other hand, pursuant to which such individual creates material (including articles, columns, photo illustrations and page designs) for publication in the *Star Tribune* newspaper or another Star Tribune media property.

67. "**General Unsecured Claim**" means any pre-petition Claim against any of the Debtors that is not an Administrative Claim, Convenience Claim, First Lien Lender Claim, Intercompany Claim, Other Priority Claim, Other Secured Claim or Priority Tax Claim. For the avoidance of doubt, notwithstanding the liens granted in connection with the Second Lien Credit Agreement, the Second Lien Lender Claims are classified as General Unsecured Claims.

68. "**Guild**" means the Minnesota Newspaper Guild/Typographical Union, CWA Local 37002.

69. "**Harte Family Trust**" means the Christopher M. Harte 1992 Family Trust.

70. "**HSR Act**" means the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended.

71. "**Impaired**" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

72. "**Indemnification Obligation**" means any obligation of any Debtor to indemnify directors, officers or employees of any of the Debtors who served in such capacity, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective articles or certificates of incorporation, corporate charters, bylaws, operating agreements or similar corporate documents or applicable law in effect as of the Effective Date.

73. "**Initial Distribution Date**" means a day selected by the Reorganized Debtors in their sole discretion that is as soon as reasonably practicable after, but not later than 45 calendar days after, the Effective Date.

74. "**Insurance Plans**" means the Debtors' insurance policies and any agreements, documents or instruments relating thereto entered into prior to the Petition Date.

75. "**Intercompany Claim**" means any Claim by Star Tribune against Star Tribune Holdings or by Star Tribune Holdings against Star Tribune.

76. "**Interest**" means any equity security within the meaning of section 101(16) of the Bankruptcy Code including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred), together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto.

77. "**Interim Compensation Order**" means the Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, entered by the Bankruptcy Court on February 6, 2009 [Docket No. 80].

78. "**Interim Distribution Date**" means the date that is 150 calendar days after the Initial Distribution Date or the most recent Interim Distribution Date thereafter, with such periodic Interim Distribution Dates occurring until the Final Distribution Date has occurred.

79. "**IRS**" means Internal Revenue Service of the United States of America.

80. "**Lender Claims**" shall consist of the First Lien Lender Claims and the Second Lien Lender Claims.

81. "**Letter of Credit**" means a documentary or standby letter of credit issued for the account of any of the Debtors, and any reimbursement agreement or similar agreement entered into prior to the Petition Date in connection therewith. The Letters of Credit are listed on Exhibit C to the Plan.

82. "**License Agreement**" means any agreement to which Star Tribune or Star Tribune Holdings is a party, granting Star Tribune or Star Tribune Holdings any right to use, exploit or practice any intellectual property rights, or restricting the right of the Star Tribune or Star Tribune Holdings to use or enforce any intellectual property rights.

83. "**Machinists**" means District Lodge No. 77 of the International Association of Machinists & Aerospace Workers.

84. "**Mailers**" means Teamsters Local #120.

85. "**Merger LLC**" means one or more Delaware limited liability companies or other entities to be formed on or before the Effective Date by New Holdings II to implement the Restructuring Transactions.

86. "**Merger LLC Certificate of Formation**" means the certificate of formation of Merger LLC, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

87. "**Merger LLC Limited Liability Company Agreement**" means the limited liability company agreement of Merger LLC, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

88. "**New Bylaws**" means the (i) New TopCo Bylaws, (ii) New Holdings I Bylaws, (iii) New Holdings II Bylaws, (iv) Old Star Tribune Holdings Bylaws, (v) Merger LLC Limited Liability Agreement and (vi) New OpCo LLC Limited Liability Agreement.

89. "**New Certificates of Incorporation**" means the (i) New TopCo Certificate of Incorporation, (ii) New Holdings I Certificate of Incorporation, (iii) New Holdings II Certificate of Incorporation, (iv) Old Star Tribune Holdings Certificate of Incorporation, (v) Merger LLC Certificate of Formation and (vi) New OpCo LLC Certificate of Formation.

90. "**New Common Stock**" means the 10,000,000 shares of common stock, par value $0.01 per share, of New TopCo to be authorized and issued hereunder or for purposes specified herein. Upon issuance, New Common Stock shall be designated either Class A New Common Stock, which shall be entitled to full voting rights pursuant to the New TopCo Certificate of Incorporation, or Class B New Common Stock, which shall be entitled to limited voting rights but shall otherwise be identical to Class A New Common Stock, in each case at the election of the recipient thereof. Each share of Class A New Common Stock shall at all times be convertible at the option of the holder thereof into a share of Class B New Common Stock, and vice versa.

91. "**New Holdings I**" means one or more Delaware corporations or other entities to be formed on or before the Effective date by New TopCo to implement the Restructuring Transactions.

92. "**New Holdings II**" means one or more Delaware corporations or other entities to be formed on or before the Effective Date by New Holdings I to implement the Restructuring Transactions.

93. "**New Holdings I Bylaws**" means the bylaws of New Holdings I, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

94.  "**New Holdings II Bylaws**" means the bylaws of New Holdings II, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

95.  "**New Holdings I Certificate of Incorporation**" means the certificate of incorporation of New Holdings I, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

96.  "**New Holdings II Certificate of Incorporation**" means the certificate of incorporation of New Holdings II, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

97.  "**New OpCo LLC**" means one or more Delaware limited liability companies or other entities to be formed on or before the Effective Date by Star Tribune Holdings to implement the Restructuring Transactions.

98.  "**New OpCo LLC Certificate of Formation**" means the certificate of formation of New OpCo LLC, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

99.  "**New OpCo LLC Limited Liability Company Agreement**" means the limited liability company agreement of New OpCo LLC, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

100.  "**New Plan Securities**" means (i) the New Common Stock, (ii) the Old Star Tribune Holdings Common Stock, (iii) the New Secured Term Notes and (iv) the New Warrants.

101.  "**New Secured Loan Documents**" means the credit agreement to be entered into by New OpCo LLC and the First Lien Lenders, as lenders, and guaranteed by New TopCo, New Holdings I and New Holdings II, effective as of the Effective Date, providing for the issuance by New OpCo LLC of the New Secured Term Notes, containing terms and conditions generally consistent with those set forth in Exhibit A to the Plan and as may be more fully set forth in a Plan Supplement, and all ancillary agreements, documents and instruments to be issued or given in connection therewith.  The New Secured Loan Documents may be an amendment and restatement or a replacement of the First Lien Credit Agreement.

102.  "**New Secured Term Notes**" means the secured term notes authorized and to be issued by New OpCo LLC in the principal amount of $100,000,000 (exclusive of Letters of Credit listed on Exhibit C and assumed pursuant to Section 6.4 of the Plan), on the Effective Date, pursuant to the Plan, on the terms and subject to the conditions set forth in Exhibit A to the Plan and the New Secured Loan Documents.

103.  "**New Stockholders' Agreement**" means the stockholders' agreement substantially in the form included in the Plan Supplement, governing the sale, disposition and treatment of the Plan Shares.  The terms of the New Stockholders' Agreement shall be subject to the consent of the First Lien Agent and the Creditors' Committee, which consent shall not unreasonably be withheld.

104. "**New TopCo**" means one or more Delaware corporations or other entities to be formed on or before the Effective Date by the First Lien Lenders to implement the Restructuring Transactions.

105. "**New TopCo Bylaws**" means the bylaws of New TopCo, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

106. "**New TopCo Certificate of Incorporation**" means the certificate of incorporation of New TopCo, which shall be substantially in the form set forth in a Plan Supplement to be filed on or before the Confirmation Date.

107. "**New Warrant Agreement**" means the warrant agreement, containing terms and conditions generally consistent with those set forth in Exhibit B to the Plan and as may be more fully set forth in a Plan Supplement, governing the exercise of the New Warrants and limiting the sale, disposition and treatment of the New Warrants. The terms of the New Warrant Agreement shall be subject to the consent of the First Lien Agent and the Creditors' Committee, which consent shall not unreasonably be withheld.

108. "**New Warrants**" means the four-year warrants to purchase an aggregate of 20.0% of the shares of New TopCo, struck at an exercise price representing a total equity value which, when added to the principal amount of the New Secured Term Notes, would equal the principal amount of the First Lien Lender Claims, subject to the terms of the New Warrant Agreement and the New Stockholders' Agreement, all on the terms and subject to the conditions set forth in Exhibit B.

109. "**NOL**" means any net operating loss that could be carried forward or back to reduce taxes (including, without limitation, deductions and credits related to alternative minimum taxes).

110. "**Notice of Intent to Assume or Reject**" means a notice delivered by the Debtors or Reorganized Debtors pursuant to Article 10 of the Plan stating an intent to assume or reject an executory contract or unexpired lease and including a proposed Assumption Effective Date or Rejection Effective Date, as applicable, and, if applicable, a Proposed Cure and/or a proposed assignment.

111. "**Old Star Tribune Holdings**" means Star Tribune Holdings on and after the Effective Date.

112. "**Old Star Tribune Holdings Bylaws**" means the bylaws of Old Star Tribune Holdings, which shall be substantially in the form set forth in a Plan Supplement.

113. "**Old Star Tribune Holdings Certificate of Incorporation**" means the certificate of incorporation of Old Star Tribune Holdings, which shall be substantially in the form set forth in a Plan Supplement.

114. "**Old Star Tribune Holdings Common Stock**" means the 10,000,000 shares of common stock, par value $0.01 per share, of Old Star Tribune Holdings to be authorized and issued hereunder or for purposes specified herein.

115. "**Operating Engineers**" means the International Union of Operating Engineers Local No. 70, AFL-CIO.

116. "**Ordinary Course Professionals Order**" means the Order Pursuant to Sections 105(a), 328 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Debtors to Employ Ordinary Course Professionals, entered by the Bankruptcy Court on February 9, 2009 [Docket No. 81].

117. "**Other Administrative Claim**" means an Administrative Claim, including, but not limited to: (i) the actual, necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the commencement of the Chapter 11 Cases, including Cure amounts and other liabilities incurred by the Debtors in the ordinary course of their businesses, (ii) reclamation claims under section 546(c) of the Bankruptcy Code and Uniform Commercial Code section 2-702, (iii) except with respect to Professionals, compensation for legal, financial advisory, accounting and other services and reimbursement of expenses that would be awarded or Allowed pursuant to sections 327, 328, 330 or 331 of the Bankruptcy Code or otherwise for the period commencing on or after the Petition Date and ending on or before the Effective Date, (iv) claims under section 503(b)(9) of the Bankruptcy Code and (v) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) or (5) of the Bankruptcy Code. Other Administrative Claim shall not include Professional Fee Claims or fees and charges assessed against the Debtors' Estates pursuant to section 1930 of title 28 of the United States Code and/or section 3717 of title 31 of the United States Code (which shall be paid pursuant to Section 16.3 of this Plan).

118. "**Other Administrative Claim Bar Date**" means the date that is 30 calendar days after the Effective Date.

119. "**Other Priority Claim**" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code.

120. "**Other Secured Claim**" means any Secured Claim (including any Secured Claim for taxes due and owing by the Debtors), other than a Lender Claim.

121. "**PBGC**" means the Pension Benefit Guaranty Corporation, a United States government corporation.

122. "**Person**" or "**person**" means a person as defined in section 101(41) of the Bankruptcy Code.

123. "**Petition Date**" means January 15, 2009, the date on which the Debtors commenced the Chapter 11 Cases, and, where relevant, the time of the filing of the Debtors' chapter 11 petitions on such date.

124. "**Plan**" means this Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, including all Plan Supplements and all exhibits, supplements,

appendices and schedules to any of the foregoing, as any of them may be amended or modified from time to time hereunder or in accordance with applicable law.

125. "**Plan Consolidation**" means the deemed consolidation of the Estates of the Debtors with each other, solely for the purposes associated with the confirmation of the Plan and the occurrence of the Effective Date, including voting, Confirmation and distribution.

126. "**Plan Documents**" means the agreements, instruments and documents to be executed, delivered, assumed and/or performed in conjunction with the consummation of the Plan on and after the Effective Date, including, without limitation, (i) the New Bylaws, (ii) the New Certificates of Incorporation, (iii) the New Secured Loan Documents, (iv) the New Warrant Agreement, (v) the Compensation Plans, (vi) the New Stockholders' Agreement and (vii) any other instruments and documents listed in the Plan Supplement.

127. "**Plan Shares**" means the 1,524,648 shares of New Common Stock to be issued under this Plan to holders of Allowed First Lien Lender Claims (Class 3) and Allowed General Unsecured Claims (Class 4). For the avoidance of doubt, the Plan Shares shall not include any shares of New Common Stock issued upon exercise of the New Warrants.

128. "**Plan Supplement**" means, collectively, the documents, agreements, instruments, schedules and exhibits and forms thereof to be filed as specified in Section 16.7 of the Plan as a Plan Supplement, as each such document, agreement, instrument, schedule and exhibit and form thereof may be altered, restated, modified or replaced from time to time, including subsequent to the filing of any such documents. Subsequent to their initial filing pursuant to Section 16.7, the Debtors shall, unless otherwise provided under the Plan, be free to modify any such documents without further filings or notice to any party. Each such document, agreement, instrument, schedule or exhibit or form thereof is referred to herein as a "**Plan Supplement**."

129. "**Platemakers**" means Graphic Communication Conference/International Brotherhood of Teamsters (GCC/IBT) Local 1-M.

130. "**Pressmen**" means Graphic Communication Conference/International Brotherhood of Teamsters (GCC/IBT) Local 1-M.

131. "**Priority Tax Claim**" means an unsecured Claim of a governmental unit entitled to priority pursuant to section 507(a)(8) or specified under section 502(i) of the Bankruptcy Code.

132. "**Pro Forma Shares**" means the Plan Shares pro forma for the dilution by the Reorganized Star Tribune Incentive Plan (including any additional shares issued to prevent dilution of the Plan Shares issued to the holders of Allowed General Unsecured Claims (Class 4)).

133. "**Professional**" means a person retained in the Chapter 11 Cases by separate Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise, but not including any person retained pursuant to the Ordinary Course Professionals Order.

134. "**Professional Fee Claims**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date through the last day of the calendar month immediately preceding the Confirmation Date.

135. "**Profit Sharing Plan**" means the profit sharing plan of the Debtors pursuant to a which 10% of the Reorganized Debtors' net profits above $5,000,000, which plan will be established and implemented by the initial board of the Reorganized Debtors as soon as reasonably practicable after the Effective Date.

136. "**Proof of Claim**" means a proof of claim filed by a holder of a Claim or Interest in accordance with the Bar Date Order.

137. "**Proposed Cure**" means, with respect to a particular executory contract or unexpired lease, the consideration that the Debtors propose (which may be zero or some amount greater than zero) (i) on the notices sent to Assumption Parties listed on Schedule 10.2(a) or (ii) on a Notice of Intent to Assume or Reject, in each case as full satisfaction of the Debtors' obligations with respect to such executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code.

138. "**Ratable Proportion**" means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims in the same Class.

139. "**Reinstated**" or "**Reinstatement**" means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the holder thereof so as to leave such Claim or Interest Unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) notwithstanding and without giving effect to any contractual provision or applicable law that entitles a Creditor to demand or receive accelerated payment of a Claim after the occurrence of a default, (A) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) reinstating the maturity of such Claim as such maturity existed before such default, (C) compensating the Creditor for any damages incurred as a result of any reasonable reliance by such Creditor on such contractual provision or such applicable law and (D) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Creditor; *provided*, *however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, without limitation, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions and affirmative covenants regarding corporate existence, prohibiting certain transactions or action contemplated by the Plan or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated to accomplish Reinstatement.

140. "**Rejection Bar Date**" means the deadline for filing Proofs of Claim arising from the rejection of an executory contract or unexpired lease, which deadline shall be 30 calendar days after the entry of an order (including, without limitation, the Confirmation Order) approving the rejection of such executory contract or unexpired lease.

141. "**Rejection Claim**" means a Claim under section 502(g) of the Bankruptcy Code.

142. "**Rejection Effective Date**" means the date upon which the rejection of an executory contract or unexpired lease under this Plan is deemed effective, which shall not be later than 60 calendar days after the Effective Date unless otherwise agreed by the relevant Rejection Party.

143. "**Rejection Party**" means a counterparty to an executory contract or unexpired lease to be rejected by the Debtors under this Plan.

144. "**Released Parties**" has the meaning set forth in Section 12.6 of the Plan.

145. "**Reorganized Debtors**" means, collectively, each of the Debtors, and any successor thereto, whether by merger, consolidation or otherwise (including, but not limited to, Merger LLC, Old Star Tribune Holdings, New TopCo, New Holdings I, New Holdings II and New OpCo LLC), on and after the Effective Date.

146. "**Reorganized Star Tribune Incentive Plan**" means the management incentive plan of the Reorganized Debtors, which management incentive plan will be established and implemented by the initial board of the Reorganized Debtors as soon as reasonably practicable after the Effective Date and pursuant to which Reserved Employee Equity constituting 6% of the Pro Forma Shares shall be allocable to certain key employees of the Reorganized Debtors; *provided* that not less than half of such 6% shall be allocable to key employees other than the chief executive officer and the chief financial officer.

147. "**Reserved Employee Equity**" means 10% of the Pro Forma Shares, which stock shall be (i) authorized and reserved on account of the Reorganized Star Tribune Incentive Plan and other future employee equity compensation or incentive programs as determined by the board of the Reorganized Debtors and (ii) subject to the registration rights provisions of the New Stockholders' Agreement.

148. "**Restructuring Transactions**" means those transactions described in Section 6.8 of the Plan.

149. "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements have been or may be supplemented, modified or amended from time to time.

150. "**Second Lien Agent**" means Wilmington Trust Company, in its capacity as successor administrative agent under the Second Lien Credit Agreement.

151. "**Second Lien Credit Agreement**" means the agreement dated as of March 5, 2007 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time) among Snowboard Acquisition Corporation (the initial borrower under the Second Lien Credit Agreement), Credit Suisse, Cayman Islands Branch, as initial Administrative Agent and Collateral Agent, RBS Securities Corporation, as Syndication Agent, and the lenders party thereto.

152. "**Second Lien Lender Claims**" means all Claims of the Second Lien Lenders under the Second Lien Credit Agreement, which Claims shall be Allowed in the aggregate amount of $103,219,533.74. For the avoidance of doubt, notwithstanding the liens granted in connection with the Second Lien Credit Agreement, the Second Lien Lender Claims are classified as General Unsecured Claims.

153. "**Second Lien Lenders**" means the Lenders under the Second Lien Credit Agreement.

154. "**Secured Claim**" means any Claim (other than a Second Lien Lender Claim, which shall be classified as a General Unsecured Claim) or portion thereof (i) that is reflected in the Schedules or a Proof of Claim as a secured claim and is secured by a Lien on Collateral, to the extent of the value of such Collateral, as determined in accordance with section 506(a) and, if applicable, section 1129(b) of the Bankruptcy Code or (ii) to the extent that the holder thereof has a valid right of set-off pursuant to section 553 of the Bankruptcy Code.

155. "**Securities Act**" means the Securities Act of 1933, as amended.

156. "**Solicitation Agent**" means The Garden City Group, Inc., 105 Maxess Road, Melville, New York 11747.

157. "**Star Tribune**" means The Star Tribune Company, a Delaware company.

158. "**Star Tribune Holdings**" means Star Tribune Holdings Corporation, a Delaware corporation.

159. "**Steering Committee**" means those First Lien Lenders serving on the steering committee of First Lien Lenders.

160. "**Transfer**" and words of like import mean, with respect to any security or the right to receive a security or to participate in any offering of any security (each, a "**security**" for purposes of this definition), the sale, transfer, pledge, hypothecation, encumbrance, assignment, constructive sale, participation in or other disposition of such security or the beneficial ownership thereof, the offer to make such a sale, transfer, constructive sale or other disposition, and each option, agreement, arrangement or understanding, whether or not in writing and whether or not directly or indirectly, to effect any of the foregoing. The term "**constructive sale**" for purposes of this definition means a short sale with respect to such security, entering into or acquiring an offsetting derivative contract with respect to such security, entering into or acquiring a futures or forward contract to deliver such security, or entering into any transaction that has substantially the same effect as any of the foregoing.

161. "**Treatment Objection**" means an objection to the Debtors' proposed assumption or rejection of an executory contract or unexpired lease pursuant to the provisions of this Plan (including an objection to the proposed Assumption Effective Date or Rejection Effective Date, the Proposed Cure and/or any proposed assignment, but not including an objection to any Rejection Claim) that is properly filed with the Bankruptcy Court and

served in accordance with the Case Management Order by the applicable Treatment Objection Deadline.

162. "**Treatment Objection Deadline**" means the deadline for filing and serving a Treatment Objection, which deadline shall be 4:00 p.m. (prevailing Eastern Time) on, (i) with respect to an executory contract or unexpired lease listed on Schedule 10.2(a) or 10.2(b), the 15th calendar day after the relevant Schedule is filed and notice thereof is mailed, (ii) with respect to an executory contract or unexpired lease the proposed treatment of which has been altered by an amended or supplemental Schedule 10.2(a) or 10.2(b), the 15th calendar day after such amended or supplemental schedule is filed and notice thereof is mailed, (iii) with respect to an executory contract or unexpired lease for which a Notice of Intent to Assume or Reject is filed, the 15th calendar day after such notice is filed and notice thereof is mailed and (iv) with respect to any other executory contract or unexpired lease, including any to be assumed or rejected by category pursuant to Sections 10.1, 10.3 or 10.4 of the Plan (without being listed on Schedule 10.2(a) or 10.2(b)), the deadline for objections to confirmation of the Plan established pursuant to the Approval Order or other order of the Bankruptcy Court.

163. "**Typos**" means the Minnesota Newspaper Guild/Typographical Union, CWA.

164. "**Unimpaired**" refers to any Claim or Interest that is not Impaired.

165. "**Union**" means each of the Platemakers, Mailers, Building Services, Electricians, Operating Engineers, Pressmen, Fleet, Machinists, Guild and Typos.

166. "**United States Trustee**" means the United States Trustee for the Southern District of New York.

167. "**Unliquidated Claim**" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is sought to be estimated.

168. "**Unsecured Claim**" means General Unsecured Claims and Convenience Claims.

169. "**Voting Deadline**" means the date established by the Approval Order by which the Solicitation Agent must actually receive a valid Ballot properly voting on the Plan in order for such vote to count as a vote to accept or reject the Plan. Such deadline is 4:00 p.m. (prevailing Eastern Time) on September 3, 2009.

170. "**Voting Instructions**" means the instructions for voting on the Plan contained in the Approval Order, Article 7 of the Disclosure Statement and the Ballots.

171. "**Voting Record Date**" means the record date for voting on the Plan, which shall be July 30, 2009.

172. "**Workers' Compensation Plan**" means each of the Debtors' written contracts, agreements, agreements of indemnity, qualified self-insurance workers' compensation

bonds, policies, programs and plans for workers' compensation and workers' compensation insurance entered into prior to the Petition Date.

### Section 1.2      Rules of Interpretation

Unless otherwise specified, all article, section, exhibit, schedule or Plan Supplement references in this Plan are to the respective article in, section in, exhibit to, schedule to or Plan Supplement to the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained herein.  Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural and any pronoun stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender.  Captions and headings in the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof.  Whenever the words "include," "includes" or "including" are used in this Plan, they shall be deemed to be followed by the words "without limitation," whether or not they are in fact followed by those words or words of like import. References from or through any date mean, unless otherwise specified, from and including or through and including, respectively.  Any references herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions.  In the event that a particular term of the Plan (including any exhibits, schedules or Plan Supplement hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation shall control and shall be binding on the parties thereto.

With respect to any reference in this Plan to a consent, approval or acceptance by any party that shall not unreasonably be withheld, or to an issue, agreement, order or other document (or the terms thereof) that shall be reasonably acceptable to any such party, such consent, approval or acceptance shall not be unreasonably conditioned, delayed or withheld.

### Section 1.3      Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

### Section 1.4      References to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### Section 1.5    Exhibits; Schedules; Plan Supplements

All exhibits and schedules to the Plan, including Plan Supplements, are incorporated into and are a part of the Plan as if set forth in full herein.  Copies of such exhibits, schedules and Plan Supplements can be obtained by downloading such documents from the Debtors' Case Information Website (located at www.startribunereorg.com) or the Bankruptcy Court's Website (located at www.nysb.uscourts.gov).  To the extent any exhibit, schedule or Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit, non-schedule or non-Plan Supplement portion of the Plan shall control.

## ARTICLE 2
### PLAN CONSOLIDATION

### Section 2.1    Order Granting Plan Consolidation

Unless previously approved by prior order of the Bankruptcy Court, the Plan shall serve as a motion seeking entry of an order approving the Plan Consolidation.

### Section 2.2    Plan Consolidation

**(a)**    Solely for the purposes specified in the Plan (including voting, Confirmation and distributions) and subject to Section 2.2(b), (i) all assets and liabilities of the Debtors shall be treated as though they were merged, (ii) all guarantees of one Debtor of the obligations of the other Debtor shall be eliminated so that any Claim against either Debtor, any guarantee thereof executed by either Debtor and any joint or several liability of any of the Debtors shall be one obligation of the Debtors and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases against either of the Debtors shall be deemed filed against the Debtors collectively and shall be one Claim against and one obligation of the Debtors.

**(b)**    The Plan Consolidation effected pursuant to this Section 2.2 shall not affect:  (i) the legal or organizational structure of the Debtors, (ii) pre- or post-Petition Date Liens or security interests, (iii) pre- or post-Petition Date guarantees that are required to be maintained (x) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or (y) pursuant to the Plan, (iv) defenses to any Cause of Action or (v) distributions out of any insurance policies or proceeds of such policies.

## ARTICLE 3
### TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

### Section 3.1    Treatment of Administrative Claims

### (a)    Other Administrative Claims

Each holder of an Allowed Other Administrative Claim shall be paid, in Cash, the full unpaid amount of such Allowed Other Administrative Claim as set forth below.

For Allowed Other Administrative Claims that are Allowed as of the Effective Date, distributions shall be made on the Initial Distribution Date or as soon as practicable thereafter (or upon such other terms as may be agreed upon by such holder and the applicable Reorganized Debtor or otherwise ordered by the Bankruptcy Court). For Other Administrative Claims that are Allowed after the Effective Date, distributions shall be made on or as soon as practicable after the date of Allowance (or upon such other terms as may be agreed upon by such holder and the applicable Reorganized Debtor or otherwise ordered by the Bankruptcy Court).

Allowed Other Administrative Claims with respect to assumed agreements, liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases and non-ordinary course liabilities approved by the Bankruptcy Court shall be paid and performed by the Reorganized Debtors in the ordinary course of business (or as otherwise approved by the Bankruptcy Court) in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

**(b)     Professional Fee Claims**

Each holder of a Professional Fee Claim shall be paid pursuant to the provisions of Section 8.1 hereof.

### Section 3.2     Treatment of Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors, (a) a single Cash distribution in an amount equal to such Allowed Priority Tax Claim or (b) equal annual Cash payments over a period ending not later than the fifth anniversary of the Petition Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest compounded annually from the Effective Date on any outstanding balance calculated at a rate equal to the market yield on the Effective Date on U.S. Treasury securities at a five-year constant maturity, quoted on an investment basis, as reported by the Federal Reserve Board; *provided* that the holder of an Allowed Priority Tax Claim shall be treated in a manner not less favorable than the holder of an Allowed General Unsecured Claim.

The Reorganized Debtors shall have the right, in their sole discretion, to pay any Allowed Priority Tax Claim or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full at any time on or after the Effective Date without premium or penalty.

### ARTICLE 4
#### CLASSIFICATION AND TREATMENT OF OTHER CLAIMS AND INTERESTS

The following table designates the classes of Claims against and Interests in each of the Debtors and specifies which of those classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to reject the Plan. As summarized in Article 2 above, this Plan is predicated upon the proposed Plan Consolidation.

**Section 4.1      Classes for the Debtors**

| Class | Designation | Plan Treatment of Allowed Claims | Projected Recovery Under the Plan | Status | Voting Rights |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | Payment in full in Cash; or other treatment that will render the Claim Unimpaired. | 100% | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Payment in full in Cash; Reinstatement of the legal, equitable and contractual rights of the holder of such Claim; payment of the proceeds of the sale or disposition of the Collateral securing such Claim to the extent of the value of the holder's secured interest in such Collateral; return of Collateral securing such Claim; or other treatment that will render the Claim Unimpaired. | 100% | Unimpaired | Deemed to Accept |

| Class | Designation | Plan Treatment of Allowed Claims | Projected Recovery Under the Plan | Status | Voting Rights |
|-------|-------------|----------------------------------|-----------------------------------|--------|---------------|
| 3 | First Lien Lender Claims | Each holder of a First Lien Lender Claim shall receive its Ratable Proportion of (i) the Class 3 New Common Stock Allocation and (ii) the New Secured Term Notes. | 29.8% to 36.1% | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Each holder of an Allowed General Unsecured Claim shall receive its Ratable Proportion of (i) the Class 4 New Common Stock Allocation, subject to dilution by any New Common Stock (other than the Plan Shares) issued on or after the Effective Date; *provided, however*, that, when diluted in connection with the Reserved Employee Equity issued in connection with the Reorganized Star Tribune Incentive Plan, such holders shall only be diluted with respect to issuance of a maximum of 5% of the Pro Forma Shares and (ii) the New Warrants. | 0.5% to 1.3%[†] | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Each holder of an Allowed Convenience Claim shall receive Cash in an amount equal to 0.9% of such holder's Allowed Convenience Claim. | 0.9%[†] | Impaired | Entitled to Vote |

[†] The projected recovery ranges listed herein for Class 4 (General Unsecured Claims) and Class 5 (Convenience Claims) are estimates that are derived from the Financial Projections annexed to the Disclosure Statement as Appendix D and other assumptions, including an estimated $150 million of Unsecured Claims, as more fully described in Section 6.3(b) of the Disclosure Statement and Appendix B attached thereto. Actual recoveries in Class 4 (General Unsecured Claims) may be different than projected recoveries based upon, among other things: (a) the market price of the shares of the New Common Stock and (b) the actual amount of Allowed Unsecured Claims against the Debtors.

| Class | Designation | Plan Treatment of Allowed Claims | Projected Recovery Under the Plan | Status | Voting Rights |
|---|---|---|---|---|---|
| 6a | Interests in Star Tribune Holdings | No distribution. | 0% | Impaired | Deemed to Reject |
| 6b | Interests in Star Tribune | Reinstatement of Interests. | Retained♦ | Unimpaired | Deemed to Accept |

### Section 4.2 Treatment of Claims and Interests

**(a) Other Priority Claims (Class 1)**

Except to the extent that the Debtors and a holder of an Allowed Other Priority Claim agree to a different treatment, each such holder shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, Cash in an amount equal to the Allowed amount of such Claim, or treatment in any other manner so that such Claim shall otherwise be rendered Unimpaired, on or as soon as reasonably practicable after the first Distribution Date occurring after the latest of (i) the Effective Date, (ii) the date at least 20 calendar days after the date such Claim becomes Allowed and (iii) the date for payment provided by any agreement between the applicable Debtor and the holder of such Claim.

**(b) Other Secured Claims (Class 2)**

Except to the extent that the Debtors and a holder of an Allowed Other Secured Claim agree to a different treatment, each holder of an Allowed Other Secured Claim shall receive, at the sole option of the Debtors and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Other Secured Claim, one of the following treatments: (i) payment in Cash in the amount of such Allowed Other Secured Claim, (ii) Reinstatement of the legal, equitable and contractual rights of the holder with respect to such Allowed Other Secured Claim, (iii) a distribution of the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such Collateral, (iv) a distribution of the Collateral securing such Allowed Other Secured Claim without representation or warranty by or recourse against the Debtors or Reorganized Debtors or (v) such other distribution as necessary to satisfy the requirements of section 1124 of the Bankruptcy Code. In the event that the Debtors satisfy an Other Secured Claim under clause (i), (iii), (iv) or (v) above, the Liens securing such Other Secured Claim shall be deemed released without further action by any party.

---

♦ The Interests in Star Tribune will not be cancelled, but will be Reinstated for the benefit of Old Star Tribune Holdings, in exchange for the agreement of Old Star Tribune Holdings to make distributions under this Plan to Creditors of Star Tribune and to use certain funds and assets, to the extent authorized in this Plan, to satisfy certain obligations of Star Tribune.

Any distributions made pursuant to this Section 4.2 shall be made on or as soon as reasonably practicable after the first Distribution Date occurring after the latest of (i) the Effective Date, (ii) the date at least 20 calendar days after the date such Claim becomes Allowed and (iii) the date for payment provided by any agreement between the applicable Debtor and the holder of such Claim.

### (c) First Lien Lender Claims (Class 3)

The First Lien Lender Claims shall be deemed Allowed in the aggregate amount of $392,923,611, inclusive of swaps, interest, fees and expenses thereunder or thereon, and the amount of letters of credit issued and outstanding as of the Petition Date under the First Lien Credit Agreement that are drawn as of the Effective Date, and the First Lien Lender Claims shall not be subject to set-off, counterclaim, recoupment, reduction or offset. On the Effective Date, each holder of a First Lien Lender Claim shall receive its Ratable Proportion of (i) the Class 3 New Common Stock Allocation and (ii) the New Secured Term Notes. On the Effective Date, Proofs of Claim 72 and 278 shall be Allowed in the aggregate amount of $392,923,611 and any other Proof of Claim (including, but not limited to, Proofs of Claim 73 and 277) filed against the Debtors in connection with any First Lien Lender Claim shall be deemed withdrawn on consent and the Claims Agent shall be authorized to expunge such Proofs of Claim without further order of the Bankruptcy Court.

Distributions in respect of First Lien Lender Claims shall be subject to the provisions of the Class 3 Claims Reserve.

### (d) General Unsecured Claims (Class 4)

Except to the extent that the Debtors and a holder of an Allowed General Unsecured Claim agree to a different treatment, each holder of an Allowed General Unsecured Claim against any of the Debtors shall receive, on or as soon as reasonably practicable after the later of (x) the Initial Distribution Date (for Claims Allowed as of the Effective Date) and (y) the Distribution Date that is at least 20 calendar days after such General Unsecured Claim becomes an Allowed General Unsecured Claim, its Ratable Proportion of (i) the Class 4 New Common Stock Allocation, subject to dilution by any New Common Stock (other than the Plan Shares) issued on or after the Effective Date; *provided*, *however*, that, when diluted in connection with the Reserved Employee Equity issued in connection with the Reorganized Star Tribune Incentive Plan, such holders shall only be diluted with respect to issuance of a maximum of 5% of the Pro Forma Shares and (ii) the New Warrants. On the Effective Date, Proof of Claim 218 shall be reduced and Allowed in the amount of $103,219,533.74 and any other Proofs of Claim filed against the Debtors (including, but not limited to, Proof of Claim 219) in connection with any Second Lien Lender Claim shall be treated in accordance with Section 2.2 of the Plan.

If any shares of New Common Stock and or Old Star Tribune Holdings Common Stock remain in the Class 4 Claims Reserve after all Disputed General Unsecured Claims have become either Allowed Claims or Disallowed Claims and all distributions required pursuant to Section 9.4(f) of this Plan have been made, the Disbursing Agent shall, at the direction of New OpCo LLC, effect a final distribution, so that each holder of an Allowed General Unsecured Claim shall receive its Final Ratable Proportion of those shares allocable to such Claim (or the actual

Cash proceeds in lieu thereof, in the event of a sale) on or as soon as reasonably practicable after the Final Distribution Date. Such final distribution, if any, together with the initial distribution set forth in the previous paragraph, shall be in full satisfaction, release and discharge of and in exchange for each Allowed General Unsecured Claim against any of the Debtors.

**(e)     Convenience Claims (Class 5)**

Except to the extent that the Debtors and a holder of an Allowed Convenience Claim agree to a different treatment, each holder of an Allowed Convenience Claim shall receive from New OpCo LLC, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date (for Claims Allowed as of the Effective Date) and (ii) the Distribution Date that is at least 20 calendar days after such Convenience Claim becomes an Allowed Convenience Claim, in full satisfaction, release and discharge of and in exchange for such Claim, Cash in an amount equal to 0.9% of such holder's Allowed Convenience Claim.

**(f)     Interests in Star Tribune Holdings (Class 6a)**

The holders of Interests in Star Tribune Holdings shall neither receive any distributions nor retain any property on account thereof pursuant to the Plan. All Interests in Star Tribune Holdings shall be cancelled and extinguished.

**(g)     Interests in Star Tribune (Class 6b)**

The Interests of Star Tribune Holdings in Star Tribune shall be Reinstated.

**Section 4.3     Treatment of Intercompany Claims**

In accordance with and giving effect to the provisions of section 1124(1) of the Bankruptcy Code, Intercompany Claims are Unimpaired by the Plan. However, the Debtors, in their sole discretion, retain the right to eliminate or adjust any Intercompany Claims as of the Effective Date by offset, cancellation, contribution or otherwise.

**Section 4.4     Compliance with Laws and Effects on Distributions**

In connection with the consummation of the Plan, the Reorganized Debtors will comply with all withholding and reporting requirements imposed by federal, state, local or foreign taxing authorities, and all distributions hereunder, whether in Cash, New Common Stock or other property, will be subject to applicable withholding and reporting requirements.

**ARTICLE 5**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**Section 5.1     Voting of Claims**

Each holder of a Claim in an Impaired Class as of the Voting Record Date that is entitled to vote on the Plan pursuant to Article 4 of the Plan shall be entitled to vote to accept or reject the Plan as provided in the Approval Order or any other order of the Bankruptcy Court.

### Section 5.2    Presumed Acceptance of Plan

Other Priority Claims (Class 1), Other Secured Claims (Class 2) and Interests in Star Tribune (Class 6b) are Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in such Classes are conclusively presumed to have accepted the Plan and the votes of such holders will not be solicited.

### Section 5.3    Presumed Rejection of Plan

Interests in Star Tribune Holdings (Class 6a) shall not receive any distribution under the Plan on account of such Interests. Pursuant to section 1126(g) of the Bankruptcy Code, the holders of Interests in such Classes are conclusively presumed to have rejected the Plan and the votes of such holders will not be solicited.

### Section 5.4    Acceptance by Impaired Classes

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of such Class entitled to vote that actually vote on the Plan have voted to accept the Plan. First Lien Lender Claims (Class 3), General Unsecured Claims (Class 4) and Convenience Claims (Class 5) are Impaired, and the votes of holders of Claims in such Classes will be solicited.

### Section 5.5    Nonconsensual Confirmation

If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to (i) re-classify any Claim or Interest, including re-classifying any Impaired Claim or Interest as Unimpaired, (ii) amend the Plan in accordance with Article 14 of the Plan and/or (iii) undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE 6
### IMPLEMENTATION OF THE PLAN

### Section 6.1    Continued Corporate Existence

Except as otherwise provided in the Plan, each Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, each with all the powers of a corporation under the laws of its respective jurisdiction of organization and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

### Section 6.2      Section 1145 Exemption

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the New Plan Securities will each be exempt from registration under the Securities Act.

### Section 6.3      Compensation Plans

On the Effective Date or as soon as practicable thereafter, the Reorganized Debtors shall implement each of the Compensation Plans pursuant to the terms thereof. The solicitation of votes on this Plan shall include and be deemed to be a solicitation of the holders of New Common Stock for approval of the Reorganized Star Tribune Incentive Plan and the authorization of the Reserved Employee Equity, and entry of the Confirmation Order shall constitute such approval.

On the next Interim Distribution Date that is no fewer than 30 days following the date on which the Reorganized Star Tribune Incentive Plan becomes effective (or as soon thereafter as reasonably practicable) and subject to the provisions of the Plan (including Articles 7 and 9), the Disbursing Agent shall distribute to holders of Allowed General Unsecured Claims sufficient shares of New Common Stock to limit the dilutive impact of the Reorganized Star Tribune Incentive Plan to 5% of the Pro Forma Shares.

### Section 6.4      Letters of Credit

Upon the Effective Date, New OpCo LLC shall assume the reimbursement obligations under the Letters of Credit listed on Exhibit C, which reimbursement obligations shall be cash collateralized by New OpCo LLC on the Effective Date.

### Section 6.5      Authorization of New Plan Securities

Without further act or action under applicable law, regulation, order or rule, New TopCo, New OpCo LLC and Old Star Tribune Holdings are authorized to issue the New Plan Securities (including any shares issued upon the exercise of the New Warrants or Reserved Employee Equity issued under the Reorganized Star Tribune Incentive Plan).

### Section 6.6      New Stockholders' Agreement

By their acceptance thereof, all persons receiving New Common Stock and/or New Warrants pursuant to the Plan are deemed to be parties to and bound by the New Stockholders' Agreement (including for this purpose any shares issued upon the exercise of the New Warrants or Reserved Employee Equity issued under the Reorganized Star Tribune Incentive Plan).

### Section 6.7      Cancellation of Existing Securities and Related Agreements

On the Effective Date, all the agreements and other documents evidencing the First Lien Lender Claims and Second Lien Lender Claims and rights of any holder of such Claims against, or Interest in, the Debtors, including options or warrants to purchase Interests, obligating the Debtors to issue, transfer or sell Interests or any other capital stock of the Debtors, shall be

cancelled; *provided*, *however*, that Interests in Star Tribune held by Star Tribune Holdings shall be Reinstated; and *provided*, *further*, that at the election of the Debtors and the First Lien Agent, the First Lien Credit Agreement may remain in effect and be amended and restated consistent with the New Secured Loan Documents; and *provided*, *further*, *however*, the agreements and other documents evidencing the Second Lien Lender claims shall continue in effect solely for the purposes of (a) allowing distributions to be made under this Plan pursuant to the Second Lien Credit Agreement and the Second Lien Agent to perform such other necessary functions with respect thereto and to have the benefit of all the protections and other provisions of the Second Lien Credit Agreement in doing so; (b) permitting the Second Lien Agent to maintain or assert any right or remedy it may have for indemnification, contribution or otherwise against the Second Lien Lenders under the Second Lien Credit Agreement with respect to fees and expenses incurred in carrying out its duties or exercising its rights and remedies thereunder; (c) permitting the Second Lien Agent to assert any right or remedy it may have for indemnification, contribution or other Claim under the Second Lien Credit Agreement, subject to any and all defenses the Debtors and the Reorganized Debtors may have under this Plan and applicable law to any such asserted right or Claims; and (d) permitting the Second Lien Agent to exercise its rights and obligations relating to the interests of the Second Lien Lenders and its relationship with the Second Lien Lenders pursuant to the Second Lien Credit Agreement, including all rights it may have to appear and be heard in these Chapter 11 Cases and any appeals.

### Section 6.8      Restructuring Transactions

On or as of the Effective Date, the distributions provided for under the Plan shall be effectuated pursuant to the following transactions described in this Article 6 of the Plan (the "**Restructuring Transactions**"), all of which shall occur *in seriatim*, and the documentation for which shall be satisfactory to the Debtors and the First Lien Agent:

(a)      New OpCo LLC shall be formed by Star Tribune Holdings; New OpCo LLC shall issue to Star Tribune Holdings the Class A Units and Class B Units (each as defined below); holders of the Class A Units shall have the right to cause New OpCo LLC to merge with any domestic corporation;

(b)      Star Tribune shall merge into New OpCo LLC; pursuant to the merger, New OpCo LLC will succeed to all assets and assume all liabilities of Star Tribune;

(c)      New OpCo LLC shall distribute to Star Tribune Holdings all of its Avoidance Actions and certain other assets (the "**Transferred Assets**");

(d)      Star Tribune Holdings shall distribute, in exchange for such holders' respective Claims, (i) to the First Lien Lenders, certain units of New OpCo LLC (the "**Class A Units**") and the Class 3 New Common Stock Allocation of Old Star Tribune Holdings Common Stock, and (ii) to holders of General Unsecured Claims, certain units of New OpCo LLC (the "**Class B Units**") and the Class 4 New Common Stock Allocation of Old Star Tribune Holdings Common Stock;

(e)      the Interests in Star Tribune Holdings that are not Old Star Tribune Holdings Common Stock will be cancelled;

(f) New TopCo shall be formed by the First Lien Lenders; New TopCo shall form New Holdings I and hold 100% of the New Holdings I Common Stock; New Holdings I shall form New Holdings II and hold 100% of New Holdings II Common Stock; New Holdings II shall form Merger LLC and shall be its sole member;

(g) the First Lien Lenders shall cause New OpCo LLC to merge with and into Merger LLC, with New OpCo LLC surviving;

(h) in exchange for its Class A Units of New OpCo LLC, each holder of a First Lien Lender Claim shall receive its Ratable Proportion of (i) the Plan Shares allocable to it as part of the Class 3 New Common Stock Allocation and (ii) the New Secured Term Notes; and

(i) in exchange for its Class B Units of New OpCo LLC, each holder of an Allowed General Unsecured Claim shall receive its Ratable Proportion of (i) the Plan Shares allocable to it as part of the Class 4 New Common Stock Allocation, subject to dilution by any New Common Stock (other than the Plan Shares) issued on or after the Effective Date; *provided*, *however*, that, when diluted in connection with the Reserved Employee Equity issued in connection with the Reorganized Star Tribune Incentive Plan, such holders shall only be diluted with respect to issuance of a maximum of 5% of the Pro Forma Shares and (ii) the New Warrants.

### Section 6.9    No Exit Financing Contingency

The Plan is not contingent upon the Debtors obtaining exit financing and the Debtors do not intend to seek exit financing.  The Debtors believe that their existing operations will generate sufficient revenue to (i) operate their business and (ii) enable them to make cash distributions provided for in the Plan, in each case, without the need for exit financing.  *See* Disclosure Statement Appendix D—"Financial Projections."

### Section 6.10    Other Transactions

In addition, except as otherwise set forth in the Plan, prior to or as of the Effective Date, either or both of the Debtors may engage in any other transactions deemed necessary or appropriate (including, without limitation, merging, dissolving or transferring assets between them); *provided*, *however*, that, pursuant to the Restructuring Transactions, Old Star Tribune Holdings shall remain in existence for the purpose of acting as Disbursing Agent, pursuing Avoidance Actions, and conducting such other business as it may choose and shall not be liquidated, as determined for United States federal income tax purposes, for at least five (5) years after the Effective Date.

## ARTICLE 7
### PROVISIONS GOVERNING DISTRIBUTIONS

### Section 7.1    Disbursing Agent

The Disbursing Agent shall make all distributions required under this Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### Section 7.2    Timing and Delivery of Distributions

#### (a)    Timing

Subject to any reserves or holdbacks established pursuant to the Plan, and taking into account the matters discussed in Section 4.4 of the Plan, on the appropriate Distribution Date or as soon as practicable thereafter, holders of Allowed Claims against the Debtors shall receive the distributions provided for Allowed Claims in the applicable Classes as of such date. Distributions on account of Unsecured Claims Allowed as of the Effective Date shall be made on or as soon as reasonably practicable after the Initial Distribution Date.

If and to the extent there are Disputed Claims as of the Effective Date, distributions on account of such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in this Plan on or as soon as reasonably practicable after the next Distribution Date that is at least 20 calendar days after the Allowance of each such Claim; *provided, however*, that distributions on account of the Claims set forth in Article 3 of this Plan shall be made as set forth therein and Professional Fee Claims shall be made as soon as reasonably practicable after their Allowance. Because of the complexities of the Chapter 11 Cases, the Debtors at the present time cannot accurately predict the timing of the Final Distribution Date.

#### (b)    De Minimis Distributions

Notwithstanding any other provision of this Plan, neither the Reorganized Debtors nor the Disbursing Agent shall have any obligation to make a particular distribution to a specific holder of an Allowed Claim on an Initial Distribution Date or an Interim Distribution Date if (i) such Allowed Claim has an economic value less than $50 and (ii) such holder is also the holder of a Disputed Claim.

Notwithstanding any other provision of this Plan, the Reorganized Debtors reserve the right in their sole discretion to distribute (or to direct the Disbursing Agent to distribute) Cash to the holder of an Allowed Claim in respect of any distribution that has an economic value less than $250 and that would otherwise receive New Common Stock and Old Star Tribune Holdings Common Stock on account of such Claim. Such Cash distribution (which shall be equal to the value of the New Common Stock and Old Star Tribune Holdings Common Stock that the holder would otherwise have received) shall be in full satisfaction, release and discharge of and in exchange for any such Claim.

Notwithstanding any other provision of this Plan, none of the Reorganized Debtors nor the Disbursing Agent shall have any obligation to make any distributions under this Plan with a value of less than $25, unless a written request therefor is received by the Reorganized Debtors from the relevant recipient at the addresses set forth in Section 16.14 hereof.

**(c)** **Delivery of Distributions**

With respect to all holders of Allowed Claims, distributions shall only be made to the record holders of such Allowed Claims as of the Distribution Record Date. On the Distribution Record Date, at the close of business for the relevant register, all registers maintained by the Debtors and the Disbursing Agent and each of the foregoing's respective agents, successors and assigns with respect to Claims shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to distributions under the Plan. The Debtors, Reorganized Debtors and Disbursing Agent and all of their respective agents, successors and assigns shall have no obligation to recognize, for purposes of distributions pursuant to or in any way arising from the Plan (or for any other purpose), any Claims that are transferred after the Distribution Record Date. Instead, they shall be entitled to recognize only those record holders set forth in the registers as of the Distribution Record Date, irrespective of the number of distributions made under the Plan or the date of such distributions. Furthermore, if a Claim is transferred 20 or fewer calendar days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

### Section 7.3 Manner of Payment under Plan

**(a)** At the option of the Debtors, any Cash payment to be made hereunder may be made by check, wire transfer or any other customary payment method.

**(b)** The Disbursing Agent shall make distributions of New Plan Securities or Cash as required under the Plan on behalf of the applicable Reorganized Debtor. Any distributions of New Common Stock or Cash that revert to the Reorganized Debtors or are otherwise cancelled (such as to the extent any distributions have not been claimed within one year) shall revest solely in New OpCo LLC and Old Star Tribune Holdings shall not have (nor shall it be considered to ever have had) any ownership interest in the amounts distributed.

**(c)** **Book Entry of New Stock and Warrants**

The Reorganized Debtors expect to deliver all shares of New Common Stock, Old Star Tribune Holdings Common Stock and New Warrants in book entry form through a registry managed by its transfer agent. The Debtors do not intend to issue physical stock certificates or warrant certificates to Creditors under this Plan. Delivery of New Common Stock, Old Star Tribune Holdings Common Stock and New Warrants in book entry form will not be made until after a holder of First Lien Lender Claims or General Unsecured Claims, as applicable, provides customary identifying information to the Reorganized Debtors or the transfer agent to enable the establishment of a book entry account with respect to such holder.

**(d)    Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed General Unsecured Claim entitled to a distribution under the Plan is based upon any obligation or instrument that is treated for U.S. federal income tax purposes as indebtedness of any Debtor and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**(e)    Compliance Matters**

In connection with the Plan, each Debtor, each Reorganized Debtor and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed by any federal, state or local taxing authority and all distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, each Debtor, each Reorganized Debtor and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtors believe are reasonable and appropriate.  For tax purposes, distributions received with respect to Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

The Debtors reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and similar encumbrances.

**(f)    Fractional Shares**

No fractional shares of New Common Stock and/or Old Star Tribune Holdings Common Stock will be issued or distributed under this Plan.  The actual distribution of shares of New Common Stock and Old Star Tribune Holdings Common Stock on the Interim Distribution Dates and the Final Distribution Date will be rounded to the next higher or lower whole number as follows:  (i) fractions less than one-half (½) shall be rounded to the next lower whole number and (ii) fractions equal to or greater than one-half (½) shall be rounded to the next higher whole number.  The total number of shares of New Common Stock and Old Star Tribune Holdings Common Stock to be distributed herein will be adjusted as necessary to account for such rounding.  No consideration will be provided in lieu of fractional shares that are rounded down.

**(g)    Fractional Interests in New Warrants**

No fractional interests in New Warrants, or Cash in lieu thereof, shall be distributed under the Plan.  When any distribution pursuant to the Plan would otherwise result in the issuance of a number of New Warrants that is not a whole number, the actual distribution of New Warrants shall be rounded as follows: (i) fractions of one-half (½) or greater shall be rounded to the next higher whole number; and (ii) fractions of less than one-half (½) shall be rounded to the next lower whole number.  The total number of shares of New Warrants to be distributed herein

will be adjusted as necessary to account for such rounding. No consideration will be provided in lieu of fractional interests that are rounded down.

### Section 7.4 Undeliverable or Non-Negotiated Distributions

If any distribution is returned as undeliverable, no further distributions to such Creditor shall be made unless and until the Disbursing Agent is notified in writing of such holder's then-current address, at which time the undelivered distribution shall be made to such holder without interest or dividends. Undeliverable distributions shall be returned to New OpCo LLC until such distributions are claimed. All distributions under the Plan that remain unclaimed for one year after the relevant Distribution Date shall indefeasibly revert to New OpCo LLC. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within 120 calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the holder of the relevant Allowed Claim within the 120-calendar-day period. After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and such funds shall revert to New OpCo LLC, notwithstanding any federal or state escheat laws to the contrary.

### Section 7.5 Claims Paid or Payable by Third Parties

#### (a) Claims Paid by Third Parties

To the extent a Creditor receives a distribution on account of a Claim and also receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Creditor shall, within 30 calendar days of receipt thereof, repay and/or return the distribution to the applicable Reorganized Debtor, to the extent the Creditor's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan.

The Claims Agent shall expunge any Claim from the official claims register, without a claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Creditor receives payment in full on account of such Claim; *provided*, *however*, that to the extent the non-Debtor party making the payment is subrogated to the Creditor's Claim, the non-Debtor party shall have a 30-calendar-day grace period to notify the Claims Agent of such subrogation rights.

#### (b) Claims Payable by Third Parties

To the extent that one or more of the Debtors' insurers agrees to satisfy a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged (to the extent of any agreed-upon satisfaction) on the official claims register by the Claims Agent without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 7.6**      **Distributions on Account of Allowed Second Lien Lender Claims**

All distributions on account of Allowed Second Lien Lender Claims shall be made to the Second Lien Agent. If a distribution is made to the Second Lien Agent, the Second Lien Agent shall administer the distribution in accordance with this Plan and the Second Lien Credit Agreement and shall be reasonably compensated for its services and disbursements related to distributions pursuant to this Plan (and for the reasonable and related fees and expenses of any counsel engaged by the Second Lien Agent with respect to administering or implementing such distributions), by the Debtors, the Reorganized Debtors, or the Distribution Agent, as appropriate, in the ordinary course upon the presentation of invoices by the Second Lien Agent; *provided*, *however*, that such fees and expenses of the Second Lien Agent (including, without limitation, the fees and expenses incurred by its counsel) shall not exceed $5,000 unless the Reorganized Debtors or the Distribution Agent request that the Second Lien Agent serve as the transfer agent, in which case the parties shall negotiate a separate fee for such services. Compensation of the Second Lien Agent for services relating to distributions under this Plan shall be made without the need for filing any application or request with, or approval by, the Bankruptcy Court. The Bankruptcy Court shall, however, retain jurisdiction to resolve any dispute with respect to the reasonableness of any such fee or expense.

The Second Lien Agent shall not be required to give any bond, surety or other security for the performance of its duties with respect to the administration and implementation of distributions.

Any and all distributions on account of Allowed Second Lien Lender Claims shall be subject to the right of the Second Lien Agent to exercise its rights and remedies under the Second Lien Credit Agreement for any unpaid fees and expenses incurred prior to the Effective Date and any fees and expenses of the Second Lien Agent incurred in making distributions pursuant to this Plan, and any fees and expenses of the Second Lien Agent incurred in responding to any objection to the payment of the fees and expenses of the Second Lien Agent.

Notwithstanding any of the foregoing, nothing herein shall be deemed to impair, waive or extinguish any rights and remedies of the Second Lien Agent under the Second Lien Credit Agreement.

## ARTICLE 8
### FILING OF ADMINISTRATIVE CLAIMS

**Section 8.1**      **Professional Fee Claims**

**(a)**      **Final Fee Applications**

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court by the date that is 45 calendar days after the Confirmation Date. Such requests shall be filed with the Bankruptcy Court and served as required by the Case Management Order; *provided* that if any Professional is unable to file its own request with the Bankruptcy Court, such Professional may deliver an original, executed copy and an electronic copy to the Debtors' attorneys at least three Business Days prior to the deadline, and the Debtors' attorneys shall file such request with the Bankruptcy Court. The objection deadline

relating to the final requests shall be 4:00 p.m. (prevailing Eastern Time) on the date that is 15 calendar days after the filing deadline. If no objections are timely filed and properly served in accordance with the Case Management Order with respect to a given request, or all timely objections are subsequently resolved, such Professional shall submit to the Bankruptcy Court for consideration a proposed order approving the Professional Fee Claim as an Allowed Administrative Claim in the amount requested (or otherwise agreed), and the order may be entered without a hearing or further notice to any party. The Allowed amounts of any Professional Fee Claims subject to unresolved timely objections shall be determined by the Bankruptcy Court at a hearing to be held no sooner than 10 calendar days after the objection deadline. Notwithstanding Section 7.2(a) of this Plan, distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed.

**(b)  Payment of Interim Amounts**

Professionals shall be paid pursuant to the "Monthly Statement" process set forth in the Interim Compensation Order with respect to all calendar months ending prior to the Confirmation Date.

**(c)  Confirmation Date Fees**

Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and Reorganized Debtors may employ and pay all Professionals in the ordinary course of business (including with respect to the month in which the Confirmation Date occurred) without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

**Section 8.2  Other Administrative Claims**

**(a)**  A notice setting forth the Other Administrative Claim Bar Date will be (i) filed on the Bankruptcy Court's docket and (ii) posted on the Debtors' Case Information Website (located at www.startribunereorg.com). No other notice of the Other Administrative Claim Bar Date will be provided.

**(b)**  All requests for payment of Other Administrative Claims that accrued on or before the Effective Date (other than Professional Fee Claims, which are subject to the provisions of Section 8.1 of this Plan) must be filed with the Claims Agent and served on counsel for the Debtors by the Other Administrative Claim Bar Date. Any requests for payment of Other Administrative Claims pursuant to this Section 8.2 that are not properly filed and served by the Other Administrative Claim Bar Date shall not appear on the register of claims maintained by the Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.

**(c)**  The Reorganized Debtors, in their sole and absolute discretion, may settle Other Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.

**(d)** Unless the Debtors or the Reorganized Debtors object to a timely-filed and properly-served Other Administrative Claim by the Claims Objection Deadline, such Other Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Other Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Other Administrative Claim should be allowed and, if so, in what amount.

**(e)** Notwithstanding the foregoing, requests for payment of Other Administrative Claims need not be filed with respect to Other Administrative Claims that (i) are for goods or services provided to the Debtors in the ordinary course of business, (ii) previously have been Allowed by Final Order of the Bankruptcy Court or (iii) are for Cure amounts.

## ARTICLE 9
### DISPUTED CLAIMS

### Section 9.1 Objections to Claims

**(a)** The Reorganized Debtors shall be entitled to object to all Claims; *provided*, *however*, that the Reorganized Debtors shall not be entitled to object to any Claim that has been expressly allowed by Final Order or under the Plan. Any objections to Claims filed by the Reorganized Debtors shall be filed on the Bankruptcy Court's docket on or before the Claims Objection Deadline.

**(b)** Claims objections filed before, on or after the Effective Date shall be filed, served and administered in accordance with the Claims Objection Procedures Order, which shall remain in full force and effect; *provided*, *however*, that, on and after the Effective Date, filings and notices related to the Claims Objection Procedures Order need only be served on the relevant claimants and otherwise as required by the Case Management Order.

### Section 9.2 Resolution of Disputed Claims

On and after the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims without notice to or approval by the Bankruptcy Court or any other party.

### Section 9.3 Estimation of Claims and Interests

The Debtors or the Reorganized Debtors may, in their sole and absolute discretion, determine, resolve and otherwise adjudicate Contingent Claims, Unliquidated Claims and Disputed Claims in the Bankruptcy Court or such other court of the Debtors' or the Reorganized Debtors' choice having jurisdiction over the validity, nature or amount thereof. The Debtors or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose, regardless of whether any of the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including,

without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, that estimated amount shall constitute the maximum limitation on such Claim and the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the ultimate allowance of such Claim; *provided*, *however*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes at only $1.

All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such Claim unless the holder of such Claim has filed a motion requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

### Section 9.4        Payments and Distributions with Respect to Disputed Claims

**(a)        No Distributions Pending Allowance**

Notwithstanding any other provision in the Plan, no payments or distributions shall be made with respect to a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

**(b)        Class 3 Claims Reserve**

Pursuant to Article 4 of this Plan, the ultimate recovery to holders of First Lien Lender Claims (Class 3) is dependent upon the total amount of Allowed Unsecured Claims (Class 4 and Class 5).  Unless (i) the total amount of Allowed Unsecured Claims is finally determined on or before the Initial Distribution Date or (ii) the Reorganized Debtors determine in their discretion that the total amount of Allowed Unsecured Claims will equal or exceed the amount of $120,000,000, the Disbursing Agent shall hold in reserve (the "**Class 3 Claims Reserve**") an appropriate portion of the Class 3 New Common Stock Allocation, together with all earnings thereon, if any (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve), to be distributed to the holders of First Lien Lender Claims on the Interim Distribution Dates and/or the Final Distribution Date, as required by this Plan.  In the event that it is determined that the total Allowed Unsecured Claims equal or exceed the amount of $120,000,000, then the Disbursing Agent shall transfer the remaining shares of New Common Stock and Old Star Tribune Holdings Common Stock in the Class 3 Claims Reserve to the Class 4 Claims Reserve.

**(c)        Class 4 Claims Reserve**

That portion of the Class 4 New Common Stock Allocation and New Warrants that is not distributed in connection with the Initial Distribution Date pursuant to Article 4 of this Plan shall

be held in reserve (the "**Class 4 Claims Reserve**" and, together with the Class 3 Claims Reserve, the "**Claims Reserves**"), together with all earnings thereon, if any (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve), to be distributed on the Interim Distribution Dates and the Final Distribution Date, as required by this Plan.

**(d)** **Voting Issues**

Any New Common Stock and Old Star Tribune Holdings Common Stock held under this Section 9.4 shall be deemed voted by the Disbursing Agent proportionally in the same manner as the rest of such shares are voted.

**(e)** **Tax Matters**

For federal income tax purposes, absent definitive guidance from the IRS or a contrary determination by a court of competent jurisdiction, the Disbursing Agent shall (i) treat each Claims Reserve as a discrete trust for federal income tax purposes (which trust may consist of separate and independent shares) in accordance with the trust provisions of the Internal Revenue Code (section 641, *et seq.*) and (ii) to the extent permitted by applicable law, report consistently with the foregoing characterization for state and local income tax purposes. All affected holders of Claims and/or Disputed Claims shall report, for income tax purposes, consistently with the foregoing.

**(f)** **Distributions After Allowance**

(i) To the extent that a Disputed General Unsecured Claim becomes an Allowed Claim after the Effective Date or the holders of First Lien Lender Claims become entitled to a subsequent distribution due to the finalization of the total amount of Allowed Unsecured Claims, the Disbursing Agent will, out of the relevant Claims Reserve, distribute to the holder thereof the distribution, if any, to which such holder is entitled under the Plan in accordance with Section 7.2(a) of this Plan. Subject to Section 9.6 of this Plan, all distributions made under this paragraph (i) on account of Allowed Claims will be made together with any dividends, payments or other distributions made on account of, as well as any obligations arising from, the distributed property, then held in the relevant Claims Reserve as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Allowed Claim holders included in the applicable class.

(ii) To the extent that a Convenience Claim becomes an Allowed Claim after the Effective Date, the Disbursing Agent will distribute to the holder thereof the distribution, if any, to which such holder is entitled under this Plan in accordance with Section 7.2(a) and Section 9.6 of this Plan.

**Section 9.5** **No Amendments to Claims**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable non-bankruptcy law. On or after the Confirmation Date, the

holder of a Claim (other than an Other Administrative Claim or a Professional Fee Claim) must obtain prior authorization from the Bankruptcy Court or the Debtors to file or amend a Claim. Any new or amended Claim (other than (i) Claims filed by the Rejection Bar Date that are related to executory contracts or unexpired leases rejected pursuant to this Plan or an order of the Bankruptcy Court or (ii) Claims filed by a governmental unit (as defined in section 101(27) of the Bankruptcy Code), consistent with the terms of the Bar Date Order) filed after the Confirmation Date without such prior authorization will not appear on the register of claims maintained by the Claims Agent and will be deemed disallowed in full and expunged without any action required of the Debtors or the Reorganized Debtors and without the need for any court order.

### Section 9.6 No Interest

Other than as provided by section 506(b) of the Bankruptcy Code or as specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Claim or Disputed Claim with respect to the period from and after the Effective Date; *provided*, *however*, that nothing in this Section 9.6 shall limit any rights of any governmental unit (as defined in section 101(27) of the Bankruptcy Code) to interest under sections 503, 506(b), 1129(a)(9)(A) or 1129(a)(9)(C) of the Bankruptcy Code or as otherwise provided for under applicable law.

## ARTICLE 10
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 10.1 Rejection of Executory Contracts and Unexpired Leases

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each executory contract and unexpired lease to which any Debtor is a party shall be deemed automatically rejected by the Debtors effective as of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) that is the subject of a motion to assume or reject pending on the Effective Date, (iii) that is assumed, rejected or otherwise treated pursuant to Section 10.3 or Section 10.4 of the Plan, (iv) that is listed on Schedule 10.2(a) or 10.2(b) of the Plan or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline. If an executory contract or unexpired lease either (x) has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date or (y) is the subject of a motion to assume or reject pending on the Confirmation Date, then the listing of any such executory contract or unexpired lease on the aforementioned Schedules shall be of no effect.

### Section 10.2 Schedules of Executory Contracts and Unexpired Leases

**(a)** Schedules 10.2(a) and 10.2(b) of this Plan shall be filed by the Debtors as specified in Section 16.7 of this Plan as Plan Supplements and shall represent the Debtors' then-current good faith belief regarding the intended treatment of all executory contracts and unexpired leases

listed thereon. The Debtors reserve the right, on or prior to 3:00 p.m. (prevailing Eastern time) on the third Business Day immediately prior to the commencement of the Confirmation Hearing, (i) to amend Schedules 10.2(a) and 10.2(b) in order to add, delete or reclassify any executory contract or unexpired lease or amend a proposed assignment and (ii) to amend the Proposed Cure, in each case with respect to any executory contract or unexpired lease previously listed as to be assumed; *provided*, *however*, that if the Confirmation Hearing is adjourned for a period of more than two consecutive calendar days, such amendment right shall be extended to 3:00 p.m. on the Business Day immediately prior to the rescheduled or continued Confirmation Hearing, and this proviso shall apply in the case of any and all subsequent adjournments of the Confirmation Hearing. Pursuant to sections 365 and 1123 of the Bankruptcy Code, and except with respect to executory contracts and unexpired leases as to which a Treatment Objection is properly filed and served by the Treatment Objection Deadline, (i) each of the executory contracts and unexpired leases listed on Schedule 10.2(a) shall be deemed assumed (and, if applicable, assigned) effective as of the Assumption Effective Date specified thereon and the Proposed Cure specified in the notice mailed to each Assumption Party shall be the Cure and shall be deemed to satisfy fully any obligations the Debtors might have with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code and (ii) each of the executory contracts and unexpired leases listed on Schedule 10.2(b) shall be deemed rejected effective as of the Rejection Effective Date specified thereon.

**(b)** The Debtors shall file initial versions of Schedules 10.2(a) and 10.2(b) and any amendments thereto with the Bankruptcy Court and shall serve all notices thereof only on the relevant Assumption Parties and Rejection Parties. With respect to any executory contract or unexpired lease first listed on Schedule 10.2(b) later than the date that is 10 calendar days prior to the Voting Deadline, the Debtors shall use their best efforts to notify the applicable Rejection Party promptly of such proposed treatment via facsimile, email or telephone at any notice address or number included in the relevant executory contract or unexpired lease or as otherwise timely provided in writing to the Debtors by any such counterparty or its counsel.

**(c)** With respect to any executory contracts or unexpired leases first listed on Schedule 10.2(b) later than the date that is 10 calendar days before the Voting Deadline, affected Rejection Parties shall have five calendar days from the date of such amendment to Schedule 10.2(b) to object to Confirmation of this Plan. With respect to any executory contracts or unexpired leases first listed on Schedule 10.2(b) later than the date that is five calendar days prior to the Confirmation Hearing, affected Rejection Parties shall have until the Confirmation Hearing to object to Confirmation of this Plan.

**(d)** The listing of any contract or lease on Schedule 10.2(a) or 10.2(b) is not an admission that such contract or lease is an executory contract or unexpired lease.

### Section 10.3    Categories of Executory Contracts and Unexpired Leases to be Assumed

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each of the executory contracts and unexpired leases within the following categories shall be deemed assumed as of the Effective Date (and the Proposed Cure with respect to each shall be zero dollars), except for any executory contract or unexpired lease (i) that has been previously assumed or rejected pursuant

to an order of the Bankruptcy Court, (ii) that is the subject of a motion to assume or reject pending on the Confirmation Date, (iii) that is listed on Schedule 10.2(a) or 10.2(b), (iv) that is otherwise expressly assumed or rejected pursuant to the terms of this Plan or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.

**(a)    Customer Programs, Insurance Plans, Surety Bonds and Workers' Compensation Plans**

Subject to the terms of the first paragraph of this Section 10.3, each Customer Program, Insurance Plan, Surety Bond and Workers' Compensation Plan shall be deemed assumed effective as of the Effective Date.  Nothing contained in this Section 10.3(a) shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' Insurance Plans.  Except as provided in the previous sentence, all Proofs of Claim on account of or in respect of any agreement covered by this Section 10.3(a) shall be deemed withdrawn automatically and without any further notice to or action by the Bankruptcy Court.

**(b)    Certain Indemnification Obligations**

Each Indemnification Obligation to a director, officer or employee that was employed by any of the Debtors in such capacity on or after the Petition Date shall be deemed assumed effective as of the Effective Date; *provided*, *however*, that any Indemnification Obligation contained in an Employee Agreement that is rejected pursuant to Section 10.4 shall also be deemed rejected.  Each Indemnification Obligation that is deemed assumed pursuant to the Plan shall (i) remain in full force and effect, (ii) not be modified, reduced, discharged, impaired or otherwise affected in any way, (iii) be deemed and treated as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not Proofs of Claim have been filed with respect to such obligation and (iv) survive Unimpaired and unaffected irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

Notwithstanding anything contained in this Plan, the Reorganized Debtors may in their sole discretion (but have no obligation to) honor each Indemnification Obligation to a director, officer or employee that was no longer employed by either of the Debtors in such capacity on or after the Petition Date, unless such obligation (i) shall have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (ii) is the subject of a motion to reject pending on or before the Confirmation Date, (iii) is listed on Schedule 10.2(b) or (iv) is otherwise expressly rejected pursuant to the terms of the Plan or any Notice of Intent to Assume or Reject.

**(c)    Collective Bargaining Agreements**

Subject to the terms of the first paragraph of this Section 10.3, each Collective Bargaining Agreement, as amended (including, without limitation, by the applicable Bankruptcy Restructuring Agreement), shall be deemed assumed effective as of the Effective Date; *provided*, *however*, that nothing in this Section or otherwise in the Plan shall be deemed to effect an assumption of any pension plan, retirement plan, savings plan, health plan or other employee benefit plan rejected, discontinued, withdrawn from, terminated or for which the authority to

effectuate the foregoing was granted. The consideration, if any, set forth in the applicable Bankruptcy Restructuring Agreements shall be the sole consideration for, and shall be deemed to satisfy, all Claims and Interests arising under the relevant Collective Bargaining Agreements (including all predecessors thereto). Upon assumption of the Collective Bargaining Agreements, the following Proofs of Claim shall be deemed withdrawn, disallowed and forever barred from assertion automatically and without any further notice to or action, order or approval of the Bankruptcy Court: (i) all Proofs of Claim filed by the Debtors' Unions and (ii) all Proofs of Claim filed by Union-represented employees, pertaining, in each case, to rights collectively bargained for or disposed of pursuant to the Collective Bargaining Agreements, including, without limitation, Claims on account of grievances, reinstatement and pension obligations; *provided*, *however*, that the Debtors reserve the right to seek adjudication of any Collective Bargaining Agreement-related dispute that concerns distributions, Claims, restructuring transactions or other aspects of the Plan between the Debtors and the relevant Union in the Bankruptcy Court. Nothing contained in Section 10.3 of the Plan shall affect the treatment of any Claim to the extent (i) previously Allowed by a Final Order of the Bankruptcy Court or (ii) filed by the Machinists and related to any post-petition consensual or non-consensual modification of the terms of employment set forth in the Machinists' Collective Bargaining Agreement; *provided* that the Debtors and the Reorganized Debtors reserve all rights to object to any such Claim(s).

### (d)    Freelance Writer Agreements

Subject to the terms of the first paragraph of this Section 10.3, each Freelance Agreement shall be deemed assumed effective as of the Effective Date. Nothing contained in this Section 10.3(d) shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any individual or entity, including, without limitation, any counterparty to a Freelance Agreement. Except as provided in the previous sentence, all Proofs of Claim on account of or in respect of any agreement covered by this Section 10.3(d) shall be deemed withdrawn automatically and without any further notice to or action by the Bankruptcy Court.

### (e)    License Agreements

Subject to the terms of the first paragraph of this Section 10.3, each License Agreement shall be deemed assumed effective as of the Effective Date. Nothing contained in this Section 10.3(d) shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any individual or entity, including, without limitation, any counterparty to a License Agreement. Except as provided in the previous sentence, all Proofs of Claim on account of or in respect of any agreement covered by this Section 10.3(d) shall be deemed withdrawn automatically and without any further notice to or action by the Bankruptcy Court.

### Section 10.4    Other Categories of Agreements and Policies

### (a)    Employee Agreements

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each Employee Agreement entered into prior to the Petition Date shall be deemed rejected effective as of the Effective Date, except for any Employee Agreement (i) that has been assumed or rejected pursuant to an order of

the Bankruptcy Court entered prior to the Effective Date, (ii) that is the subject of a motion to assume or reject pending on the Confirmation Date, (iii) that is listed on Schedule 10.2(a) or 10.2(b) of the Plan, (iv) that is otherwise expressly assumed or rejected pursuant to the terms of the Plan, (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline or (vi) that is an agreement related to payment or potential repayment of employee relocation expenses (each such relocation agreement shall instead be deemed assumed effective as of the Effective Date). The assumption by the Debtors or the Reorganized Debtors or the agreement of the Debtors or the Reorganized Debtors to assume any Employee Agreement will not entitle any Person to any contractual right to any benefit or alleged entitlement under any of the Debtors' policies, programs or plans, except as to such individual and as expressly set forth in such Employee Agreement.

### (b) Employee Benefits

As of the Effective Date, whether or not such employee benefits are provided for in an Employee Agreement that has been rejected in these Chapter 11 Cases (by operation of this Plan or otherwise), the Debtors and the Reorganized Debtors, in their sole and absolute discretion, may honor, in the ordinary course of business, the Debtors' written contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of either of the Debtors who served in such capacity at any time; *provided*, *however*, that this provision does not address Collective Bargaining agreements or the terms of employment of employees represented by labor unions; and *provided, further,* that the Debtors shall not be permitted to honor severance benefits for a severance period of more than nine months for any employee who is severed more than six months following the Effective Date. To the extent that the above-listed contracts, agreements, policies, programs and plans are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless a Treatment Objection is timely filed and properly served, each of them will be deemed assumed (as modified or terminated) as of the Effective Date with a Cure of zero dollars. However, notwithstanding anything else herein, at the discretion of the Reorganized Debtors, the assumed plans shall be subject to modification in accordance with the terms thereof.

The Debtors intend to execute amended employment agreements with certain of their employees on or before the Confirmation Date.

### (c) Non-Qualified Plans

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each of (i) the Pension Supplement Plan, (ii) the Senior Management Group Supplement Plan, (iii) the Credited Service Supplement Plan, (iv) the Executive Supplemental Savings Plan, (v) the Deferred Compensation Plan for Management Employees and (vi) any other non-qualified deferred compensation or retirement obligations of the Debtors will be deemed rejected and terminated effective as of the Effective Date and no further benefits will be payable thereunder; *provided*, *however*, that the Reorganized Debtors may in their sole discretion (but shall have no obligation to) honor or satisfy the benefits accrued for current employees.

**(d)      Certain Retiree Benefits**

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay retiree health and welfare benefits of the Debtors at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code at any time prior to confirmation of the Plan, and for the duration of the period for which the Debtors have obligated themselves to provide such benefits.  The Reorganized Debtors may unilaterally modify or terminate any retiree benefits (including health and welfare benefits) in accordance with the terms of the plan, program, policy or document under which such benefits are established or maintained; *provided*, *however*, that nothing herein shall be construed to enlarge the Reorganized Debtors' rights to modify such retiree benefits (including such retiree benefits that are vested, if any) under applicable non-bankruptcy law.

**(e)      The Company-Sponsored Plans**

The Company-Sponsored Plans are not terminated under the Plan and the applicable Reorganized Debtor will assume and continue to maintain the Company-Sponsored Plans. Nothing in the Plan will be construed as discharging, releasing or relieving Star Tribune or its successors, including New OpCo LLC or any other party, in any capacity, from any liability for the minimum funding requirements or statutory premiums under ERISA or the Internal Revenue Code with respect to the Company-Sponsored Plans or PBGC.  Neither PBGC nor the Company-Sponsored Plans will be enjoined or precluded from seeking to enforce such liability as a result of any provision of the Plan or the Confirmation Order.  On the Effective Date, and upon assumption of the Company-Sponsored Plans, PBGC's proofs of claim filed against the Debtors on behalf of the Company-Sponsored Plans shall be deemed withdrawn on consent and the Claims Agent shall be authorized to expunge any and all proofs of claim filed by PBGC without further order of the Bankruptcy Court, without prejudice to the rights of PBGC or any Company-Sponsored Plan fiduciary to take such action as may be appropriate with respect to future conduct of the Reorganized Debtors, or any of their then-controlled group members, as contributing sponsor with respect to the Company-Sponsored Plans, following the Effective Date under the provisions of the Company-Sponsored Plans and ERISA.

**Section 10.5      Assumption and Rejection Procedures and Resolution of Treatment Objections**

**(a)      Proposed Assumptions**

(i)      With respect to any executory contract or unexpired lease to be assumed pursuant to any provision of this Plan or any Notice of Intent to Assume or Reject, unless an Assumption Party files and properly serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed assumed as of the Assumption Effective Date proposed by the Debtors or Reorganized Debtors, without any further notice to or action by the Bankruptcy Court, and any obligation the Debtors or Reorganized Debtors may have to such Assumption Party with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code shall be deemed fully satisfied by the Proposed Cure, if any, which shall be the Cure.

(ii)     Any objection to the assumption of an executory contract or unexpired lease that is not timely filed and properly served shall be denied automatically and with prejudice (without the need for any objection by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval by the Bankruptcy Court), and any Claim relating to such assumption shall be forever barred from assertion and shall not be enforceable against any Debtor or Reorganized Debtor or their respective Estates or properties without the need for any objection by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval by the Bankruptcy Court, and any obligation the Debtors or the Reorganized Debtors may have under section 365(b) of the Bankruptcy Code (over and above any Proposed Cure) shall be deemed fully satisfied, released and discharged, notwithstanding any amount or information included in the Schedules or any Proof of Claim.

**(b)     Proposed Rejections**

(i)     With respect to any executory contract or unexpired lease to be rejected pursuant to any provision of this Plan or any Notice of Intent to Assume or Reject, unless a Rejection Party files and properly serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed rejected as of the Rejection Effective Date proposed by the Debtors or Reorganized Debtors without any further notice to or action by the Bankruptcy Court.

(ii)     Any objection to the rejection of an executory contract or unexpired lease that is not timely filed and properly served shall be deemed denied automatically and with prejudice (without the need for any objection by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval by the Bankruptcy Court).

**(c)     Resolution of Treatment Objections**

(i)     Both on and after the Effective Date, the Reorganized Debtors may, in their sole discretion, settle Treatment Objections without any further notice to or action by the Bankruptcy Court or any other party (including by paying any agreed Cure amounts).

(ii)     With respect to each executory contract or unexpired lease as to which a Treatment Objection is timely filed and properly served and that is not otherwise resolved by the parties after a reasonable period of time, the Debtors, in consultation with the Bankruptcy Court, shall schedule a hearing on such Treatment Objection and provide at least 14 calendar days' notice of such hearing to the relevant Assumption Party or Rejection Party.  Unless the Bankruptcy Court expressly orders or the parties agree otherwise, any assumption or rejection approved by the Bankruptcy Court notwithstanding a Treatment Objection shall be effective as of the Assumption Effective Date or Rejection Effective Date originally proposed by the Debtors or specified in the Plan.

(iii)    Any Cure shall be paid as soon as reasonably practicable following the entry of a Final Order resolving an assumption dispute and/or approving an assumption, unless the Debtors or Reorganized Debtors file a Notice of Intent to Assume or Reject under Section 10.5(d).

(iv)    No Cure shall be allowed for a penalty rate or default rate of interest, each to the extent not proper under the Bankruptcy Code or applicable law.

**(d)    Reservation of Rights**

If a Treatment Objection is filed with respect to any executory contract or unexpired lease sought to be assumed or rejected by any of the Debtors or Reorganized Debtors, the Debtors and the Reorganized Debtors reserve the right (i) to seek to assume or reject such agreement at any time before the assumption, rejection, assignment or Cure with respect to such agreement is determined by Final Order and (ii) to the extent a Final Order is entered resolving a dispute as to Cure or the permissibility of assignment (but not approving the assumption of the executory contract or unexpired lease sought to be assumed), to seek to reject such agreement within 14 calendar days after the date of such Final Order, in each case by filing with the Bankruptcy Court and serving upon the applicable Assumption Party or Rejection Party, as the case may be, a Notice of Intent to Assume or Reject.

### Section 10.6    Rejection Claims

Any Rejection Claim must be filed with the Claims Agent by the Rejection Bar Date. Any Rejection Claim for which a Proof of Claim is not properly filed and served by the Rejection Bar Date shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors or their respective Estates or properties. The Debtors or Reorganized Debtors may contest any Rejection Claim in accordance with Section 9.1 of the Plan.

### Section 10.7    Assignment

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned pursuant to this Plan shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

**Section 10.8    Approval of Assumption, Rejection, Retention or Assignment of Executory Contracts and Unexpired Leases**

(a)    Entry of the Confirmation Order by the Bankruptcy Court shall, subject to the occurrence of the Effective Date, constitute approval of the rejections, retentions, assumptions and/or assignments contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.    Each executory contract and unexpired lease that is assumed (and/or assigned) pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms as of the applicable Assumption Effective Date, except as modified by the provisions of this Plan, any order of the Bankruptcy Court authorizing or providing for its assumption (and/or assignment), or applicable federal law.

(b)    The provisions (if any) of each executory contract or unexpired lease assumed and/or assigned pursuant to the Plan that are or may be in default shall be deemed satisfied in full by the Cure, or by an agreed-upon waiver of the Cure.    Upon payment in full of the Cure, any and all Proofs of Claim based upon an executory contract or unexpired lease that has been assumed in the Chapter 11 Cases or under the terms of the Plan shall be deemed disallowed and expunged with no further action required of any party or order of the Bankruptcy Court.

**Section 10.9    Modifications, Amendments, Supplements, Restatements or Other Agreements**

Unless otherwise provided by this Plan or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed, whether or not such executory contract or unexpired lease relates to the use, acquisition or occupancy of real property, shall include (i) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in remedy related to such premises, unless any of the foregoing agreements has been or is rejected pursuant to an order of the Bankruptcy Court or is otherwise rejected as part of the Plan.

Modifications, amendments, supplements and restatements to pre-petition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases and actions taken in accordance therewith (i) do not alter in any way the pre-petition nature of the executory contracts and unexpired leases, or the validity, priority or amount of any Claims against the Debtors that may arise under the same, (ii) are not and do not create post-petition contracts or leases, (iii) do not elevate to administrative expense priority any Claims of the counterparties to the executory contracts and unexpired leases against any of the Debtors and (iv) do not entitle any entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any pre-petition executory contracts or unexpired leases and subsequent modifications, amendments, supplements or restatements.

# ARTICLE 11

## PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

### Section 11.1    Corporate Action

(a)    On the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated hereby with respect to each of the Reorganized Debtors shall be deemed authorized and approved in all respects.  Without limiting the foregoing, such actions may include:  (i) the adoption and filing of the New Certificates of Incorporation, (ii) the approval of the New Bylaws, (iii) the election or appointment, as the case may be, of directors and officers for the Reorganized Debtors, (iv) the issuance of the New Plan Securities, (v) the adoption and/or implementation of the Compensation Plans, (vi) the corporate actions described in Section 6.8 and (vii) the execution, delivery and performance of the Plan Documents.  The New Bylaws and New Certificates of Incorporation shall contain provisions necessary (a) to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such certificates of incorporation and bylaws as permitted by applicable law and (b) to effectuate the provisions of the Plan, in each case without any further action by the stockholders or directors of the Debtors or the Reorganized Debtors.  After the Effective Date, any of the Reorganized Debtors may file restated certificates of incorporation (or other formation documents, if applicable) with the Secretary of State in any appropriate jurisdiction.

(b)    All matters provided for herein involving the corporate structure of any Debtor or any Reorganized Debtor, or any corporate action required by any Debtor or any Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders or directors of such Debtor or Reorganized Debtor or by any other stakeholder.

(c)    On or after the Effective Date, the appropriate officers of each Reorganized Debtor and members of the board of directors, board of managers or equivalent body of each Reorganized Debtor are authorized and directed to issue, execute, deliver, file and record any and all agreements, documents, securities, deeds, bills of sale, conveyances, releases and instruments contemplated by the Plan in the name of and on behalf of such Reorganized Debtor and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### Section 11.2    Directors and Officers of the Reorganized Debtors

(a)    On the Effective Date, the management, control and operation of each Reorganized Debtor shall become the general responsibility of the board of directors of such Reorganized Debtor or, in the cases of New OpCo LLC and Merger LLC, their respective sole members

(b)    The initial board of directors of New TopCo shall consist of no fewer than five, but no more than seven, members, all but one of whom shall be selected by the First Lien Agent and the Steering Committee; the remaining member of each board of directors shall be the chief executive officer of New OpCo LLC.  The initial boards of directors of Old Star Tribune Holdings, New Holdings I and New Holdings II shall be selected by the First Lien Agent and the

Steering Committee. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose prior to the Confirmation Hearing the identity and affiliations of the Persons proposed to serve on the Reorganized Debtors' respective boards of directors. Each of the members of such initial boards of directors shall serve a one-year term. After selection of the initial boards of directors, the holders of the New Common Stock will elect members of the boards of directors of the Reorganized Debtors in accordance with the applicable certificate of incorporation, applicable bylaws and applicable non-bankruptcy law.

**(c)** Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the principal officers of Star Tribune immediately prior to the Effective Date will be the officers of the Reorganized Debtors as of the Effective Date. Each such officer shall serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of such Reorganized Debtor's constituent documents.

**(d)** The Debtors will disclose at or prior to the Confirmation Hearing the nature of the compensation payable to each Person proposed to serve on the board of directors of New TopCo. Additionally, on or before the Effective Date (or as soon thereafter as practicable), the Reorganized Debtors will disclose the identity of the Person selected by the Steering Committee to serve as chief executive officer of New OpCo LLC, as well as the nature of such Person's compensation.

## ARTICLE 12
### EFFECT OF CONFIRMATION

### Section 12.1  Vesting of Assets

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of each of the Debtors shall vest in each of the respective Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise specifically provided in the Plan. All Liens, Claims, encumbrances, charges and other interests shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan. As of the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and settle and compromise Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

### Section 12.2  Releases and Discharges

The releases and discharges of Claims and Causes of Action described in the Plan, including releases by the Debtors and by holders of Claims, constitute good faith compromises and settlements of the matters covered thereby and are consensual. Such compromises and settlements are made in exchange for consideration and are in the best interest of holders of Claims, are fair, equitable, reasonable and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan (a) is within the jurisdiction of the Bankruptcy Court under sections 1334(a), 1334(b) and 1334(d) of title 28 of the United States Code, (b) is an

essential means of implementing the Plan, (c) is an integral element of the transactions incorporated into the Plan, (d) confers material benefit on, and is in the best interests of, the Debtors, their estates and their Creditors, (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors and (f) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

### Section 12.3      Discharge and Injunction

**Except as otherwise specifically provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and shall terminate all Interests of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as otherwise specifically provided herein or in the Confirmation Order, upon the Effective Date, all existing Claims against the Debtors and Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests (and all representatives, trustees or agents on behalf of each holder) shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees, or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims against, liabilities of and Interests in the Debtors, subject to the occurrence of the Effective Date.**

**Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein, each holder (as well as any representatives, trustees or agents on behalf of each holder) of a Claim or Interest and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or terminated Interest in, the Debtors.**

**Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and Affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtors, the Reorganized Debtors or property of any Debtors or Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors or property of any Debtors or Reorganized Debtors, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the**

Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors or (iv) asserting any right of set-off, subrogation or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, with respect to any such Claim or Interest. Such injunction shall extend to any successors or assignees of the Debtors and Reorganized Debtors and their respective properties and interest in properties.

Section 12.4    Term of Injunction or Stays

Unless otherwise provided herein, any injunction or stay arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

Section 12.5    Exculpation

Pursuant to the Plan, none of the Debtors, Reorganized Debtors, the Creditors' Committee, the Avista Funds, the Harte Family Trust, the Administrative Agents or the Steering Committee, or any of their respective Affiliates, members, officers, directors, employees, advisors, actuaries, accountants, attorneys, financial advisors, investment bankers, consultants, professionals or agents, shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to or arising out of, the Chapter 11 Cases, the negotiation of any settlement or agreement in the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the preparation and distribution of the Disclosure Statement, the offer, issuance and distribution of any securities issued or to be issued pursuant to the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, ultra vires acts or gross negligence.

Section 12.6    Release by the Debtors

Pursuant to the Plan, as of the Effective Date, the Debtors, their Estates and the Reorganized Debtors release all of the Released Parties (defined below) from any and all Causes of Action (other than the rights of the Debtors or the Reorganized Debtors to enforce this Plan and the Plan Documents including contracts, instruments, releases, indentures and other agreements or documents delivered thereunder) held, assertable on behalf of or derivative from the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on or relating to or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor, any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments or other documents, which

Causes of Action are based in whole or in part on any act, omission, transaction, event or other occurrence (except for willful misconduct, ultra vires acts or gross negligence) taking place before the Effective Date. For the purposes of this Plan, "Released Parties" means all present officers and directors of the Debtors, all present and former members of the Creditors' Committee, the Steering Committee, the Avista Funds, the Harte Family Trust, the Administrative Agents and/or any of their or the Debtors' respective Affiliates, members, officers, directors, employees, advisors, actuaries, attorneys, financial advisors, investment bankers, professionals or agents; *provided, however*, that if any Released Party directly or indirectly brings or asserts any claim or Cause of Action in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against the Debtors, the Reorganized Debtors or any of their respective Affiliates, officers, directors, members, employees, advisors, actuaries, attorneys, financial advisors, investment bankers, professionals or agents, then the release set forth in this Section 12.6 of the Plan (but not any release or indemnification or any other rights or claims granted under any other section of this Plan or under any other document or agreement) shall automatically and retroactively be null and void *ab initio* with respect to such Released Party; *provided, further*, that the immediately preceding clause shall not apply to the prosecution in the Bankruptcy Court (or any appeal therefrom) of the amount, priority or secured status of any pre-petition Claim against the Debtors.

### Section 12.7    Voluntary Releases by the Holders of Claims and Interests

Except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, holders of Claims that (a) vote to accept or reject the Plan and (b) do not elect (as permitted on the Ballots) to opt out of the releases contained in this paragraph shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Causes of Action whatsoever, including derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor, any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments or other documents, which Causes of Action are based in whole or in part on any act, omission, transaction, event or other occurrence (except for willful misconduct, ultra vires acts or gross negligence) taking place before the Effective Date. A holder of a Claim who does not cast a Ballot or who is not entitled to cast a Ballot will be deemed to have opted out of the releases set forth in this paragraph.

### Section 12.8    Set-off and Recoupment

The Debtors and Reorganized Debtors may, but shall not be required to, set-off or recoup against any Claim and any distribution to be made on account of such Claim, any and all claims, rights and Causes of Action of any nature that the Debtors may have against

the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided*, *however*, that neither the failure to effect such a set-off or recoupment nor the allowance of any Claim hereunder shall constitute a waiver, abandonment or release by the Debtors or the Reorganized Debtors of any such claims, rights and Causes of Action that the Debtors or the Reorganized Debtors may have against the holder of such Claim.

### Section 12.9    Avoidance Actions

Except as otherwise provided herein or in a Final Order entered in these Chapter 11 Cases, the Reorganized Debtors shall retain any and all avoidance claims accruing to the Debtors under sections 502(d), 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code (collectively, the "**Avoidance Actions**") and prosecute such claims at the discretion of the Reorganized Debtors; *provided*, *however*, upon the occurrence of the Effective Date, the First Lien Lenders shall be deemed to have waived and released any lien on or security interest in the Avoidance Actions and the proceeds thereof.

### Section 12.10    Preservation of Causes of Action

**(a)**    Except as expressly provided in this Article 12, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors or the Reorganized Debtors may have or that the Reorganized Debtors may choose to assert on behalf of their respective Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action or Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim and/or claim for set-off that seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors or representatives or (ii) the turnover of any property of the Debtors' Estates.  A non-exclusive list of retained Causes of Action is attached to the Plan as Schedule 12.10.

**(b)**    Except as set forth in this Article 12, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors had immediately prior to the Petition Date or the Effective Date against or with respect to any Claim left Unimpaired by the Plan.  The Reorganized Debtors shall have, retain, reserve and be entitled to assert all such rights and Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

**(c)**    National Union Fire Insurance Company of Pittsburgh, PA Arbitration

The Star Tribune has commenced an arbitration against National Union Fire Insurance Company of Pittsburgh, PA pursuant to which the Star Tribune is seeking insurance coverage under a Directors, Officers and Private Company Liability Insurance Policy for the defense costs incurred and settlement costs paid with respect to a lawsuit brought by Northwest Publications, LLC d/b/a St. Paul Pioneer Press, captioned Northwest Publ'n, LLC v. The Star Tribune Co., No. 62-C6-07-003489, filed in 2007 in the District Court for the Fourth Judicial District, County of Ramsey, State of Minnesota.  The arbitration hearing is scheduled for September 21-25, 2009.

As with all litigation, while the Debtors believe their legal positions to be correct, there can be no guarantees with respect to timing or outcome. As such, neither the Disclosure Statement nor any Appendix thereto make any assumption with respect to this arbitration or any other litigation in which the Debtors may be a party.

### Section 12.11   Compromise and Settlement of Claims and Controversies

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Causes of Action and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such an Allowed Claim. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, except as set forth in the Plan, the provisions of the Plan shall also constitute a good faith compromise of all Claims, Causes of Action and controversies by any Debtor against any other Debtor. In each case, the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their estates and the holders of such Claims and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice or action, order or approval of the Bankruptcy Court, the Debtors may compromise and settle Claims against them and Causes of Action against other Entities, in their sole and absolute discretion, and after the Effective Date, such right shall pass to the Reorganized Debtors.

# ARTICLE 13
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### Section 13.1     Conditions to Confirmation

The following are conditions precedent to Confirmation of the Plan that must be satisfied or waived in accordance with Section 13.3 of the Plan:

**(a)**    The Bankruptcy Court shall have entered a Confirmation Order in form and substance acceptable to the Debtors; and

**(b)**    The Plan Supplements shall have been filed by the Debtors.

### Section 13.2     Conditions to Effectiveness

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 13.3 of the Plan:

**(a)**    The Confirmation Order, in form and substance acceptable to the Debtors, shall have been entered and become a Final Order;

**(b)**      All actions, documents and agreements necessary to implement the Plan shall have been effected or executed as determined by the Debtors in their sole and absolute discretion;

**(c)**      The Debtors shall have received any authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Plan and that are required by law, regulation or order, in each case as determined by the Debtors in their sole and absolute discretion;

**(d)**      Each of the New Certificates of Incorporation, New Bylaws and the Compensation Plans will be in full force and effect as of the Effective Date; and

**(e)**      The Plan Documents shall have been executed and delivered by all of the parties thereto.

### Section 13.3      Waiver of Conditions to Confirmation or Effectiveness

Upon written notice to the First Lien Agent and the Creditors' Committee, the Debtors may waive any of the conditions set forth in Section 13.1 and Section 13.2 hereof at any time, without any notice to other parties-in-interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate the Plan.  The failure to satisfy any condition prior to the Confirmation Date or the Effective Date may be asserted by the Debtors, in their sole and absolute discretion (with written notice to the First Lien Agent and the Creditors' Committee), as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion).  The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE 14
### MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### Section 14.1      Plan Modifications

**(a)**      Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and those restrictions on modifications set forth in the Plan, the Debtors may alter, amend or modify the Plan, without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  After the Confirmation Date and prior to substantial consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

**(b)**      Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially and adversely affect the treatment of holders of Claims or Interests; *provided*, *however*, that the Debtors shall give written notice of any such technical adjustments and modifications to the First Lien Agent and the Creditors' Committee.

**Section 14.2      Revocation or Withdrawal of the Plan and Effects of Non-Occurrence of Confirmation or Effective Date**

The Debtors reserve the right to revoke, withdraw or delay consideration of the Plan prior to the Confirmation Date, either entirely or with respect to any one or more of the Debtors, and to file subsequent amended plans of reorganization.  If the Debtors revoke or withdraw the Plan in its entirety, if Confirmation does not occur or if the Effective Date does not occur on or prior to 120 calendar days after the Confirmation Date (and the Debtors file a notice of revocation on the Bankruptcy Court's docket), then, absent further order of the Bankruptcy Court (a) the Plan shall be null and void in all respects, (b) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases effected by the Plan and any document or agreement executed pursuant hereto, shall be deemed null and void and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person; (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting executory contracts or unexpired leases, including, without limitation, assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE 15
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Chapter 11 Cases for, among other things, the following purposes:

**(a)**     To hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of Cure amounts and Claims resulting therefrom;

**(b)**     To hear and determine any motion, adversary proceeding, application, contested matter or other litigated matter pending on or commenced after the Confirmation Date;

**(c)**     To hear and determine all matters with respect to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim;

**(d)**     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

**(e)**     To hear and determine all applications for compensation and reimbursement of Professional Fee Claims;

**(f)**     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any

inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(h)     To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(i)     To issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan;

(j)     To enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(k)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)     To hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code;

(m)     To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Approval Order, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplements;

(n)     To recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(o)     To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(p)     To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(q)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases with respect to any Person;

(r)     To hear any other matter not inconsistent with the Bankruptcy Code; and

**(s)**     To enter a final decree closing the Chapter 11 Cases.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims.

# ARTICLE 16
## MISCELLANEOUS

### Section 16.1     Exemption from Transfer Taxes and Recording Fees

Pursuant to section 1146(b) of the Bankruptcy Code, the issuance, Transfer or exchange of notes or equity securities under the Plan, the creation, the filing or recording of any mortgage, deed of trust or other security interest, the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the Plan Documents, the New Plan Securities, any joint operating agreement, merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 16.2     Expedited Tax Determination

The Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of such Debtors or Reorganized Debtors for all taxable periods ending on or before the Effective Date.

### Section 16.3     Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of title 28 of the United States Code and/or section 3717 of title 31 of the United States Code, as determined by the Bankruptcy Court shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

### Section 16.4     No Listing of Plan Securities and Restrictions on Transfer

None of the Plan Securities shall be listed on a national securities exchange or a qualifying interdealer quotation system.

The New Common Stock and New Warrants will be issued subject to the New Stockholders' Agreement which will contain restrictions on a holder's ability to transfer the New Common Stock and New Warrants. In addition, the New TopCo Certificate of Incorporation and the Old Star Tribune Holdings Certificate of Incorporation will contain restrictions on a holder's

ability to transfer the New Common Stock, New Warrants and the Old Star Tribune Holdings Common Stock, designed to ensure that the New Common Stock, New Warrants and Old Star Tribune Holdings Common Stock will not have 500 or more holders of record (determined pursuant to the Securities Exchange Act of 1934, as amended).

### Section 16.5    Dissolution of the Creditors' Committee

Upon the Effective Date, the Creditors' Committee shall dissolve automatically and its members shall be released and discharged from all rights, duties, responsibilities and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.

### Section 16.6    Second Lien Agent Fees

The Debtors shall pay the reasonable fees and expenses of the Second Lien Agent through the Effective Date, including the reasonable fees and expenses of its professionals, up to $100,000 in the aggregate.  Any disputes regarding reasonableness shall be submitted to the Bankruptcy Court for resolution.

### Section 16.7    Plan Supplements

Draft forms of certain Plan Documents and certain other documents, agreements, instruments, schedules and exhibits specified in the Plan shall, where expressly so provided for in this Plan, be contained in Plan Supplements filed from time to time, all of which shall be filed with the Bankruptcy Court no later than 10 calendar days prior to the Voting Deadline.  Unless otherwise expressly provided in the Plan, the Debtors shall remain free to modify or amend such documents after such date.  Upon filing with the Bankruptcy Court, the Plan Supplements may be inspected in the office of the clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may also obtain a copy of the Plan Supplements on the Debtors' Case Information Website (located at www.startribunereorg.com) or the Bankruptcy Court's Website (located at www.nysb.uscourts.gov).

### Section 16.8    Claims Against Other Debtors

Nothing in the Plan or the Disclosure Statement or any document or pleading filed in connection therewith shall constitute or be deemed to constitute an admission that either of the Debtors are subject to or liable for any Claim against the other Debtor.

### Section 16.9    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### Section 16.10    Section 1125 of the Bankruptcy Code

As of and subject to the occurrence of the Confirmation Date:  (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and 1125(e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation

governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan and, therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

### Section 16.11    Severability

In the event that any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Section 16.12    Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit hereto or a Schedule or Plan Documents provide otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### Section 16.13    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former holders of Claims or Interests and their respective heirs, executors, administrators, successors and assigns.

**Section 16.14    Notices**

To be effective, any notice, request or demand to or upon, as applicable, the Debtors, the Creditors' Committee, the First Lien Agent and/or the Steering Committee, or the United States Trustee must be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually received and confirmed by the relevant party as follows:

If to the Debtors:

> The Star Tribune Company
> 425 Portland Avenue
> Minneapolis, Minnesota  55488
> Attn:   Randy Lebedoff
> Telephone: (612) 673-4000
> Facsimile:  (612) 673-7933
>
> with a copy to:
>
> Davis Polk & Wardwell LLP
> 450 Lexington Avenue
> New York, New York 10017
> Attn:    Marshall S. Huebner
>             Timothy E. Graulich
> Telephone:  (212) 450-4000
> Facsimile:  (212) 701-6001

If to the Creditors' Committee:

> Lowenstein Sandler PC
> 65 Livingston Avenue
> Roseland, New Jersey  07068
> Attn:    Sharon Levine
>             Scott Cargill
> Telephone:  (973) 597-2500
> Facsimile:  (973) 597-2400

If to the First Lien Agent and/or the Steering Committee:

> Latham & Watkins LLP
> 885 Third Avenue
> New York, New York  10022
> Attn:    Mark Broude
>             Jude Gorman
> Telephone:  (212) 906-1200
> Facsimile:  (212) 751-4864

If to the United States Trustee:

> 33 Whitehall Street, Suite 2100
> New York, New York 10004
> Attn:   Brian Masumoto
> Telephone:  (212) 510-0500
> Facsimile:  (212) 668-2255

### Section 16.15    Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Interests or as to any treatment or classification of any contract or lease.

### Section 16.16    Further Assurances

The Debtors, Reorganized Debtors and all holders of Claims receiving distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### Section 16.17    Case Management Order

Except as otherwise provided herein, the Case Management Order shall remain in full force and effect, and all "Court Papers" (as defined in the Case Management Order) shall be filed and served in accordance with the procedures set forth in the Case Management Order; *provided* that on and after the Effective Date, "Court Papers" (as defined in the Case Management Order) need only be served on (i) the chambers of the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408 (by a hard copy, with all exhibits, unless the Court otherwise directs), (ii) the attorneys for the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn:  Marshall S. Huebner and Timothy E. Graulich, (iii) the attorneys for the First Lien Agent, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn: Mark Broude and (iv) The Garden City Group, 105 Maxess Road, Melville, New York 11747, Attn: Craig Johnson; *provided* that final requests for payment of Professional Fee Claims filed pursuant to Section 8.1(a) of this Plan (and all "Court Papers" related thereto) shall also be

served on the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004, Attn: Brian Masumoto.

Dated: New York, New York
September 8, 2009

Respectfully submitted,

THE STAR TRIBUNE COMPANY (for itself and on behalf of Star Tribune Holdings Corporation)

By:   /s/ Christopher M. Harte
       Name:  Christopher M. Harte
       Title:   Publisher & Chairman

# PLAN EXHIBITS

## Exhibit A

| **Terms of New Secured Term Notes** ||
|---|---|
| **Issuer:** | New OpCo LLC. |
| **Guarantors:** | New TopCo, New Holdings I and New Holdings II. |
| **Principal Amount:** | $100,000,000.  The New Secured Notes are payable in two tranches: Tranche A in the principal amount of $60,000,000 and Tranche B in the principal amount of $40,000,000. |
| **Agent:** | Credit Suisse. |
| **Maturity:** | Five years. |
| **Interest rate:** | Tranche A will bear cash pay interest at LIBOR + 3% (with a LIBOR floor of 5%).  At the election of the Reorganized Debtors (which election may be made, in the discretion of the Reorganized Debtors, with respect to any portion (including all) of the interest due in respect of Tranche B), Tranche B will either (i) bear cash pay interest at LIBOR + 3% (with a LIBOR floor of 5%) or (ii) be payable-in-kind at 11%. |
| **Covenants:** | TBD. |
| **Ranking:** | Senior secured first lien priority. |
| **Collateral:** | All assets. |
| **Governing Law:** | State of New York. |

## Exhibit B

| Terms of New Warrants | |
|---|---|
| **Issuer:** | New TopCo |
| **Expiration Date:** | Four years from the Effective Date (the "**Participation Period**"). |
| **Exercise Price:** | An exercise price representing a total equity value which, when added to the principal amount of New Secured Term Notes, would equal the principal amount of the First Lien Lender Claims, subject to the terms of the New Warrant Agreement and the New Stockholders' Agreement. |
| **Amount:** | 20.0% of the shares of New TopCo, subject to dilution. |
| **Registration Rights:** | The shares underlying the warrants will receive the benefit of the registration rights provisions of the New Stockholders' Agreement, which will be substantially in the form contained in the Plan Supplement. |
| **Exercisability:** | TBD. |
| **Anti-dilution:** | Adjustments for stock splits and combinations, dividends and other distributions, issuances or deemed issuances of equity at dilutive prices, mergers, consolidations and capital reorganizations, and other typical anti-dilution protections. |
| **Triggering Events:** | If, at any time during the Participation Period, the Debtors consummate a transaction or series of transactions resulting in (1) a merger or consolidation (other than one in which stockholders of New TopCo own a majority by voting power of the outstanding shares of the surviving or acquiring entity), or (2) a sale, lease, transfer or other disposition of all or substantially all of the assets of New TopCo, or (3) a material purchase of the equity of New TopCo, or (4) the securities of New TopCo being publicly traded, or (5) a merger or consolidation (after which stockholders of New TopCo own a majority by voting power of the outstanding shares of the surviving or acquiring entity but in which the value of the equity is determined), or (6) a monetizing event to be defined in the definitive documentation (each of (1) through (6), a "**Liquidity Event**"), 100% of the equity of New TopCo shall be valued in a manner consistent with the merger consideration or the value of all of the assets of New TopCo or the purchase price for the securities of New TopCo. <br><br> If the Liquidity Event results in the equity holders of New TopCo receiving cash on account of their equity, the holders of Allowed General Unsecured Claims shall be deemed to have exercised all of their warrants on a cashless basis and simultaneously will receive cash in the Liquidity Event transaction for all equity held by them on the same basis as the other equity holders of New TopCo. <br><br> If the Liquidity Event results in the equity holders of New TopCo receiving securities of another entity or other assets for their equity in New TopCo, the holders of Allowed General |

| | |
|---|---|
| | Unsecured Claims shall also be entitled to exercise all warrants on a cashless basis and to participate in such distribution of securities or other assets on the same basis as all other equity holders of New TopCo, or to have their warrants adjusted pursuant to the terms of the New Warrant Agreement.<br><br>New TopCo hall not consummate any merger, consolidation, asset sale, change of control or similar transaction unless the acquiring party, if other than New TopCo, assumes all of the obligations of New TopCo under the settlement, including assuming the warrants and making appropriate adjustments to the securities to be received by warrant holders upon exercise. |
| **Cashless Exercise:** | After the occurrence of any Liquidity Event (a "**Triggering Event**"), the warrants will thereafter have a cashless exercise feature, with the then current market price determined consistently with the Triggering Event value of New TopCo, divided by the number of shares of New TopCo common stock then outstanding. Any warrant holder exercising a warrant on a cashless exercise basis after a Triggering Event shall be entitled to receive common stock of New TopCo reflecting its proportionate share of the amount by which the valuation of New TopCo in the Triggering Event exceeds the Initial Threshold, subject to adjustments to be provided in the warrants and subject to dilution as indicated above under "Amount." On a cashless exercise, the spread will be paid by the issuance of common stock of New TopCo valued consistently with the most recent Triggering Event value. |
| **Governing Law:** | State of New York |

**Exhibit C**

| Outstanding Letters of Credit | |
|---|---|
| **Beneficiary** | **Amount** |
| National Union Fire Insurance Company | $429,650.00 |
| American Motorist Insurance Company | $70,000.00 |
| Royal Indemnity Company | $385,000.00 |
| One Beacon Insurance Company | $529,529.00 |
| Zurich American Insurance | $1,900,000.00 |
| | |
| **Total:** | **$3,314,179.00** |